## ASSOCIATES DISCOUNT CORPORATION *v.* GEAR.

1. TRIAL—MOTION FOR DIRECTED VERDICT—BASIS OF DECISION.
   A party claiming to be entitled to judgment as a matter of law should, at the time of making such request, state the grounds upon which he relies, the decision of the trial court being limited to grounds fairly covered by such motion.

2. BILLS AND NOTES—HOLDER IN DUE COURSE—MOTION FOR DIRECTED VERDICT.
   Defendant in action on promissory note *held,* to have failed to indicate that his motion for directed verdict was based on claim that plaintiff was not a holder in due course.

3. APPEAL AND ERROR—SUPPLEMENTAL RECORD.
   A record on appeal in the Supreme Court may not be supplemented by an *ex parte* proceeding.

4. SAME—OMISSIONS IN RECORD—EX PARTE AFFIDAVITS.
   Omissions in a record on appeal in the Supreme Court may not be supplied by *ex parte* affidavits.

5. SAME—RECORD—EX PARTE AFFIDAVITS.
   Cases on appeal in the Supreme Court must be disposed of on the record as made and not upon *ex parte* affidavits. ·

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur, Pleading § 335 *et seq.*

.6. SAME—SUPREME COURT—RECORD.

> The Supreme Court does not consider matters dehors the record on appeal.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted June 10, 1952. (Docket No. 62, Calendar No. 45,421.) Decided September 3, 1952.

Action by Associates Discount Corporation against Harold W. Gear on a promissory note. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Reversed and remanded for entry of judgment on verdict.

*James B. Stanley,* for plaintiff.

*Jackson, Fitzgerald & Dalm,* for defendant.

BUSHNELL, J. This is an action on a promissory note. Plaintiff Associates Discount Corporation, a foreign corporation, maintains a branch office at Kalamazoo, through which it loans money, secured by chattel mortgages and conditional sales contracts. One of its accounts was with Wallace R. Ewing, a used-car dealer in Kalamazoo, operating under the name of Kalamazoo Auto Mart. Edward J. Schludecker, the manager of Associates in Kalamazoo, testified:

"Our company has been dealing with Mr. Ewing long before June of 1948 which was when I came here. I have been servicing Mr. Ewing's accounts personally. * * * I would go to his place daily, sometimes twice a day. I would handle the financing of the paper in his office on his lot. There might have been an occasion when he brought a deal in but that was very rare. In servicing a dealer we furnish a complete line of financing and furnish them with forms for their business such as defendant's."

According to Schludecker, Associates had hundreds of transactions with Ewing, part of which was "floor-planning automobiles." He said:

"Floor-planning means loaning money to the dealer to finance his purchase of that automobile so that he may place that car on his floor or sale lot, for sale, and when he sells the car then the floor-plan is paid off and at that time we take a retail paper from the purchaser. When we floor-plan an automobile we take a chattel mortgage and a bill of sale from the dealer which is represented in this case by exhibit B. During the time that we have the car floor-planned, the evidence of title or ownership is in our office and it is our practice to keep that evidence of ownership until the car or the floor-plan is paid off. In this case we had a bill of sale in our office."

On May 4, 1949, Associates floor-planned a 1949 convertible Cadillac coupe for Ewing, taking a chattel mortgage for $2,800 and a bill of sale. Nothing was said at the time about the title or a title certificate. Schludecker said the Cadillac looked like a new car, and that Ewing said it was a new car. The name of the Werner Motor Company of Goshen, Indiana, was on the bill of sale. Schludecker thought that, since the car had never been sold at retail, no title had yet been issued. Ewing testified that he told Schludecker that the title was in Indianapolis being processed and that he would have it in a few days.

On May 6th defendant Harold W. Gear purchased a 1949 convertible Cadillac coupe from Ewing. In order to be sure about the interest rate, Ewing called Schludecker and asked him if he would handle a note bearing 4% interest, which was lower than the usual rate. Schludecker agreed, but stated on the witness stand that he did not know at that time what particular car Ewing was selling. Gear had signed a note and chattel mortgage in blank and left them in Ewing's hands. When Schludecker went to Ewing's

office that same day to discuss the details of the transaction, he (Schludecker) filled in these blank forms, taking the necessary information from the sales tax slip made out by Ewing. In the sales agreement the car was described as a 1949 new convertible Cadillac coupe. Schludecker gave Ewing Associates' check for $3,100, and Ewing gave Schludecker a check for $2,800, which Schludecker said "was to pay off the floor-plan." Ewing then had about 18 cars on the floor-plan with Associates, but only 1 Cadillac. On cross-examination, Schludecker admitted that when he got back to his office he knew that the Cadillac car floor-planned on May 4th was the one sold to Gear on May 6th.

The record is not too clear, but it seems undisputed that the Cadillac was taken from Gear by someone, because it was admitted by Associates that, as between Gear and Ewing, there was a total failure of consideration. After the close of the proofs, Associates' counsel stated in the presence of the jury that "the car involved in this case was a used car in the sense that there had been issued to the car or for the car a certificate of title which was in existence on and prior to May 4, 1949. * * * As a matter of fact that it was not a new car which had not yet acquired a certificate of title." However, counsel claimed that at the time of the transaction, Schludecker was not aware that it was a used car.

Motions for directed verdicts were denied and the case was submitted to the jury under the Empson act. PA 1915, No 217 (CL 1948, § 691.691 *et seq.* [Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*]). The jury's verdict in the sum of $3,348 in favor of plaintiff was set aside and a judgment in favor of Gear was entered notwithstanding the verdict. In a memorandum opinion the trial judge said in part:

"Plaintiff, through its agent, Schludecker, is charged with knowledge of the fact that Ewing was a used-car dealer and did not have a new-car dealer's license. These facts were known to witness, Schludecker, * * * when he purchased the note in question, he understood that the note covered the sale of a new car, and not a used car. * * *

"Under the law Ewing had no right as a used-car dealer to sell new cars, and the plaintiff is not a holder in due course."

Plaintiff argues on appeal that the circuit court may not consider or grant a motion for a directed verdict (or enter a judgment notwithstanding the verdict) where no grounds are stated in the motion. The state of the record is this: At the close of plaintiff's proofs, counsel for defendant Gear said:

"At this time I would like to move the court for a directed verdict on the ground that the plaintiff has failed to make out a case, and the court should direct a verdict of no cause of action.

"*The Court:* I will reserve decision on the motion."

At the close of all the testimony plaintiff's counsel suggested that he had a motion to make, which he would like to discuss with the court not in the presence of the jury. After the jury had retired, counsel stated that the undisputed testimony indicated that plaintiff was a holder in due course, there was no question of fact in dispute, and, therefore, Associates was entitled to recover the full amount of the note. This motion was with the reservation that, in the event of its denial, Associates could still go to the jury.

Defendant's counsel then stated: "I would like to make a motion for a directed verdict, but I would like to have a ruling on the other first." After some colloquy, defendant's counsel stated: "At the time we were talking only about certificate of title under the

law, if I remember right. We were being confined to that."

Defendant claims that, as indicated in the court's memorandum opinion on his motion for a directed verdict, his motion was "based upon specific grounds known to the court and plaintiff before the case was submitted to the jury."

In *Turner* v. *Mutual Benefit Health & Accident Ass'n,* 316 Mich 6, 27, we stated:

"The party claiming to be entitled to judgment as a matter of law should, at the time of making the request, state the grounds upon which he relies."

We held that it is equally clear that the decision of the trial court on the motion is limited to those grounds "fairly covered by the motion for a directed verdict as presented prior to the submission of the case to the jury." In discussing the reason for the rule, we quoted with approval the following from *Smalley* v. *Railway Co.,* 34 Utah 423, 442 (98 P 311, 316):

" 'We think the reasons given by courts, requiring the grounds upon which a motion for nonsuit is based to be specified, in order that the court may know upon what question of law the case is asked to be taken from the jury, and the party against whom the motion is directed may be afforded opportunity to correct the defects, if they admit of correction, and can be obviated by additional evidence, apply with equal force to a motion for a direction of a verdict. If such opportunity should be afforded him on a motion of nonsuit, which, if granted, not being an adjudication on the merits, and not a bar to another action, for much stronger reasons should such opportunity be given him on a motion for a direction of a verdict, which, if granted, would be a bar to another action.' "

To this statement we now add the following from *Falvey* v. *Coats* (CCA), 47 F2d 856 (89 ALR 1):

"A motion for a directed verdict should specifically state the grounds upon which it is urged. * * * It was due to the lower court that its attention be specifically called to the grounds upon which the motion was based; it was due to opposing counsel so that they might have an opportunity, either intelligently to oppose the motion, or ask to reopen the case for the introduction of further testimony, or for leave to amend the pleadings, or to move for a nonsuit; it was due the appellate court so as to enable that court to see whether or not the grounds urged were the same as those presented to the trial court. Where a motion for a directed verdict, failing to state the grounds upon which it is based, is denied, it is unfair to the trial court and to the appellate court; but, where it is granted, it is unfair to the party against whom it is granted."

Defendant argues in his brief that the ground for his motion was that Associates was not a holder in due course, and that "the stated ground that plaintiff had not made out a case was broad enough to include all reasons why plaintiff could not be a holder in due course." He further argues that the conclusion reached by the trial judge was based upon the theory advanced by Associates that Schludecker thought a new car was involved. Neither argument serves the purpose of warning plaintiff of the defects of its case.

It is difficult on the record before us to conclude that defendant fairly indicated to plaintiff's counsel and the court the theory upon which he relied.

Defendant, by a motion subsequently filed here, has sought to supplement the record by adding thereto the statement of the trial judge which contains his understanding of the specific reasons given by defendant and on which his motion for a directed verdict was made. This statement indicates that the

argument was advanced, in the absence of the jury, that Associates could not be a holder in due course because its representative, Schludecker, knew that the car Ewing sold to Gear was a new one and that a licensed used-car dealer is not permitted to sell a new car. See CL 1948, § 256.114 (Stat Ann 1947 Cum Supp § 9.1482), and *Salway* v. *Secretary of State,* 321 Mich 211. It may be assumed that, if this statement of the trial judge is to be considered a part of the record, it then follows that plaintiff was aware of the specific grounds upon which defendant's motion for a directed verdict was based.

The more important question, however, is whether on appeal this *ex parte* certified statement of the trial judge should be considered a part of the record. We are concerned both with the question of practice and procedure, and the difficulty in this harsh case of permitting practice which would establish a bad precedent. Court Rule No 66 (1945) describes in detail the procedure necessary to settle a record. It provides for hearing on any controversy and an opportunity for objection. While no procedure is prescribed in the rule for supplementing a record, it is clear that it should not be an *ex parte* proceeding. Omissions in a record may not be supplied by *ex parte* affidavits. Cases in this Court must be disposed of on the record as made and not upon *ex parte* affidavits. Furthermore, we do not consider matters dehors the record. *O'Connor* v. *O'Connor,* 281 Mich 640.

The subsequent motion to supplement the record is denied. The record as made does not show that defendant adequately stated the grounds upon which he based his motion to dismiss.

The judgment *non obstante veredicto* is not supported by the settled record. It is vacated and the cause is remanded for the entry of a judgment in

accordance with the verdict of the jury. Costs to appellant.

DETHMERS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.