SETTERINGTON v PONTIAC GENERAL HOSPITAL

Docket No. 161134. Submitted November 12, 1996, at Detroit. Decided May 23, 1997, at 9:05 A.M.

Jane Fahr brought an action in the Oakland Circuit Court against Pontiac General Hospital and others, alleging medical malpractice in the diagnosis of a lump on her leg that ultimately proved to be a cancerous tumor. Upon Fahr's death in July 1990, the action was continued by the personal representative of her estate, Raymond Setterington, as an action for wrongful death. In August 1987, January 1988, and September 1988, Fahr had undergone CT scans at defendant hospital, and on each occasion a different radiologist had failed to inform the treating physician of the possibility that the lump might be a cancerous tumor, causing the treating physician to believe that the condition was a hematoma and that no biopsy was warranted. In October 1988, a biopsy was performed revealing the lump to be a cancerous tumor. By December 1988, the cancer had metastasized to Fahr's chest. At the jury trial held before Fred M. Mester, J., the plaintiff's expert witness testified that there was a sixty percent chance that Fahr would have survived at least five years had the lump been discovered and treated as a cancerous tumor at the time of the first CT scan. The defense of the hospital, which by the end of the trial was the only defendant, turned primarily on the claim that the radiologists were not its employees or agents and that, in any event, Fahr's death had not been shown to be proximately caused by any failure of the radiologists to make an earlier diagnosis of the true nature of the lump. The jury returned a verdict for the plaintiff, finding that all three radiologists were agents of hospital and that all three had been professionally negligent in the services they rendered to Fahr. Following the trial court's denial of plaintiff's motion for a new trial regarding damages or additur and of the defendant's motion for a new trial or remittitur, a judgment was entered in accordance with the jury's verdict. The defendant appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. The family of a decedent can maintain an action for medical malpractice where the malpractice denied the decedent a substantial opportunity to survive. The substantial opportunity rule applies

to all medical malpractice actions. Accordingly, because there was testimony that an early and accurate diagnosis of cancer could have resulted in timely treatment that would have given Fahr a sixty percent chance of surviving at least five years, there was evidence at trial sufficient to establish that the failure of the first radiologist to make a proper diagnosis was a proximate cause of Fahr's death.

2. Because the defendant did not specifically argue that the testimony of the plaintiff's expert witness did not establish a basis for finding that the failure of the second and third radiologists to make a proper diagnosis was a proximate cause of Fahr's death, but rather argued generally that the expert's testimony was insufficient to establish proximate cause, the defendant's assertion that the claims against the second and third radiologists should not have been submitted to the jury was not preserved for appellate review. In any event, there was a sufficient basis presented at trial to support the jury's verdict that the professional negligence of the second and third radiologists proximately caused Fahr's death.

3. The question whether the verdict form should have apportioned damages among the three radiologists was not preserved for appellate review. In any event, there is no apportionment of damages among multiple tortfeasors whose negligence has combined to create a single injury.

4. The question whether the radiologists were agents of the defendant was properly submitted to the jury for its determination and was not, as the defendant suggests, decided as a matter of law by the court.

5. There is evidence on the record to support the jury's finding on the basis of agency by estoppel that the radiologists were acting as agents of the defendant when they rendered their services to Fahr.

6. The court properly refused to permit defendant to cross-examine the treating physician concerning any agreements that may have led to her settlement with the plaintiff during trial in view of the treating physician's testimony at a hearing outside the presence of the jury that she had not agreed to give testimony adverse to the radiologists in exchange for being allowed to settle the plaintiff's claim against her.

7. The court properly refused to allow the three radiologists to be examined concerning any CT scans or other radiological studies other than the ones that they initially made as a sanction for the refusal of the radiologists during discovery to give opinions concerning the standard of care or films of CT scans other than their

own unless they were paid. Error, if any, was harmless because the defense's other expert witnesses were not so limited.

8. The wrongful death act permits recovery by a decedent's heirs of the loss of financial support without regard to the age of the heirs. Accordingly, the trial court did not err in allowing the jury to consider, compute, and award damages to Fahr's children for periods beyond their eighteenth birthdays.

9. Because the court instructed the jury in accordance with a defense request that the jury should reduce its award of future damages to its present cash value and the verdict appears already to have been reduced to its present cash value, the court properly refused the defense request that the court reduce to a present cash value a verdict that had already incorporated such a reduction.

10. The question whether the verdict should be reduced by forty percent because Fahr had at best a sixty percent chance of survival was not raised at the trial and thus was not preserved for appellate review, no manifest injustice having been shown.

11. The court did not abuse its discretion in refusing to grant a new trial concerning the question of damages or to grant additur on the bases that the jury did not award damages for pain and suffering or mental anguish and made an inadequate award for loss of companionship. The jury's verdict was supported by evidence adduced at trial, and the court did not abuse its discretion in accepting the jury's determination with respect to the question of damages.

12. Because the plaintiff did not object at trial to the court's instructing the jury with respect to comparative negligence and plaintiff's counsel drafted the jury verdict form that included provision for the jury's determination of comparative negligence and alluded to the propriety of comparative negligence during oral argument, the question whether the jury should have been instructed concerning comparative negligence was not preserved for appellate review.

Affirmed.

1. Negligence — Medical Malpractice — Lost Opportunity.

The family of a decedent can maintain an action for medical malpractice where the malpractice denied the decedent a substantial opportunity to survive; the substantial opportunity rule applies to all medical malpractice actions.

2. Damages — Negligence — Multiple Tortfeasors — Apportionment of Damages.

There is no apportionment of damages among multiple tortfeasors whose negligence has combined to create a single injury.

3. HOSPITALS — MALPRACTICE — PHYSICIANS AND SURGEONS — VICARIOUS LIABIL-
ITY — PRINCIPAL AND AGENT — ESTOPPEL

   A hospital, generally speaking, is not vicariously liable for the negli-
   gence of a physician who is an independent contractor and merely
   uses the hospital facilities to render treatment to patients; however,
   a physician can be found to be the agent by estoppel of a hospital
   so as to create vicarious liability on the part of the hospital for the
   physician's malpractice where an individual who is seeking medical
   treatment at a hospital looks to the hospital for that treatment and
   has reason to expect that those rendering treatment are agents of
   the hospital rather than independent physicians who are merely
   using the hospital as the situs for treatment; a relevant factor in
   determining whether a physician is an ostensible agent of a hospi-
   tal is whether the hospital provided the physician to the individual
   or whether a physician-patient relationship existed independent of
   the hospital setting.

4. DAMAGES — WRONGFUL DEATH ACT — CHILDREN — DAMAGES BEYOND
MAJORITY.

   The wrongful death act permits recovery by a decedent's heirs of the
   loss of financial support without regard to the age of the heirs;
   accordingly, a trial court does not err in allowing a jury to con-
   sider, compute, and award to the children of a decedent damages
   for periods beyond the childrens' eighteenth birthdays (MCL
   600.2922[3][a], [6]; MSA 27A.2922[3][a], [6]).

*Zamler, Mellen & Shiffman, P.C.* (by *Gene Zamler*)
(*Bendure & Thomas,* by *Mark R. Bendure,* of Coun-
sel), for the plaintiff.

*Portnoy, Pidgeon & Roth* (by *James M. Pidgeon*),
for the defendant.

Before: MARILYN KELLY, P.J., and JANSEN and M. WAR-
SHAWSKY*, JJ.

MARILYN KELLY, P.J. In this wrongful death action,
defendant, Pontiac General Hospital, appeals and
plaintiff, Raymond Setterington, cross-appeals as of
right following a jury verdict for plaintiff.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant argues that plaintiff failed to present evidence on the issue of causation. It asserts that the trial court erred in concluding as a matter of law that the radiologists involved were agents of Pontiac General Hospital. It claims error in the court's denial of cross-examination of Dr. Sanford on the issue of bias. It alleges error, also, in the court's ruling that the radiologists could not be questioned about CT scans other than ones they interpreted. With respect to damages, defendant asserts that the trial court erred in allowing the jury to award damages to decedent's children beyond their eighteenth birthday. Lastly, it claims that the judge failed to reduce the jury's award of future damages to present value.

Plaintiff asserts that the trial court erred in denying his motion for additur and submitting the issue of comparative negligence to the jury. We affirm.

I

Concerned about a lump in her thigh, Jane Fahr had a CT scan taken at Pontiac General Hospital in August, 1987. The radiologist, Dr. Mittner, did not mention that the tumor could be cancerous. In reliance on the radiologist's report, Dr. Sanford, plaintiff's treating physician, regarded the condition as a hematoma and believed that a biopsy was not warranted.

In late January, 1988, Fahr returned to Pontiac General Hospital for another CT scan as the lump seemed to be enlarging. The radiologist, Dr. Khalid, did not include the possibility of a malignant tumor in his report. As a result, Dr. Sanford continued to believe that Fahr had a hematoma.

In early September, 1988, Fahr returned to Dr. Sanford who had another CT scan performed. Dr. Kayne

the radiologist found an enlarged hemotoma. In a follow-up discussion with Dr. Sanford, Dr. Kayne assured Dr. Sanford that the lump did not appear to be dangerous or invasive. As a result, Dr. Sanford concluded that Fahr had a hematoma with a leaking blood vessel.

In October, 1988, the tumor was biopsied and the cancer diagnosed. By December, 1988, chest scans revealed metastasis. Fahr died on July 6, 1990, at the age of 32.

Raymond Setterington, Fahr's personal representative, brought a malpractice action against Dr. Choi, Dr. Sanford and Pontiac General Hospital, alleging that they failed to timely diagnose and treat Fahr.[1] The jury found that the radiologists were agents of defendant Pontiac General Hospital and breached the standard of care. They also concluded that the breach was a proximate cause of Fahr's death. The jury returned a verdict for plaintiff in the amount of $251,554.62. The trial court denied plaintiff's motion for new trial as to damages or additur, as well as defendant's motion for new trial or remittitur.

II

First, defendant argues that plaintiff failed to produce evidence that the malpractice was a proximate cause of Fahr's death. It asserts that the only proximate cause testimony that plaintiff presented was that of Dr. Golomb. He testified that there is a five-year survival rate for sixty percent of the patients who undergo the treatment he recommended at the stage of plaintiff's cancer in the fall of 1987. However,

---

[1] Dr. Choi referred Fahr to Dr. Sanford.

he did not testify that plaintiff would have fallen within the sixty percent group. Moreover, defendant asserts that there was no evidence that Fahr would have survived even with the proper diagnosis and treatment.

This case is governed by the Supreme Court's holding in *Falcon v Memorial Hosp*, 436 Mich 443; 462 NW2d 44 (1990). In *Falcon*, the Supreme Court held that the family of a decedent could maintain an action for malpractice where the malpractice denied the decedent a substantial opportunity to survive. *Id.* at 461-462 (LEVIN, J.), 472-473 (BOYLE, J.). The substantial opportunity rule applies to all medical malpractice actions. *Blair v Hutzel Hosp*, 217 Mich App 502; 552 NW2d 507 (1996); *Weymers v Khera*, 210 Mich App 231; 533 NW2d 334 (1995), rev'd on other grounds 454 Mich 639; 563 NW2d 647 (1997).

Here, Dr. Golomb testified that, had Fahr received an accurate diagnosis of cancer in August, 1987 and received treatment, she would have had a sixty percent chance of survival. Hence, defendant is factually incorrect in asserting that there was no proximate cause testimony.

III

Defendant also argues that the claim as to Drs. Kayne and Khalid should not have been presented to the jury. The record reveals that defendant moved for a directed verdict on three grounds: (1) that the radiologists were not defendant's agents, (2) that the radiology report had not misled Dr. Sanford, and (3) that the testimony of Dr. Golomb that plaintiff would have had a 40% chance of dying in any event was insufficient to establish proximate cause. There was no sep-

arate argument made as to Drs. Kayne and Khalid. Therefore, the issue is not preserved for appeal. *Associates Discount Corp v Gear*, 334 Mich 360, 364-366; 54 NW2d 687 (1952).

We find that the evidence as to the malpractice of Drs. Khalid and Kayne supported the jury's finding that each was professionally negligent. Dr. Kayne failed to diagnose the cancer in September, 1988. With a proper diagnosis there could have been a full month or more of treatment before metastasis was visible in December. Therefore, there was sufficient evidence to support the conclusion that the malpractice of Dr. Kayne was a proximate cause of the metastasis and Fahr's death. As to Dr. Khalid, whose malpractice was seven months earlier, the conclusion is even stronger.

IV

Defendant also argues that the verdict form should have apportioned damages between the three radiologists. Defendant failed to preserve this issue for appeal. *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 184; 475 NW2d 854 (1991). Regardless, there is no apportionment of damages between multiple tortfeasors whose negligence has combined to create a single injury. *Bowerman v Detroit Free Press*, 279 Mich 480, 490; 272 NW 876 (1937); *Sexton v American Aggregates*, 60 Mich App 524; 231 NW2d 449 (1975).

V

Next, defendant argues that the trial court erred in ruling as a matter of law that the radiologists were

agents of defendant Pontiac General Hospital. We disagree.

Following discussion of the point at the start of trial, the trial court deferred decision. During trial, plaintiff called Dr. Mittner as a witness. The trial court then explained to the jury that it would ultimately decide the relationship of the radiologists to the hospital. At the conclusion of trial, the court instructed the jury that plaintiff had the burden of proving that the radiologists were agents of the hospital. Therefore, the record does not support defendant's claim that the court ruled as a matter of law that the radiologists were agents of the hospital.

VI

Defendant also claims that there is nothing in the record to suggest that the radiologists were ostensible agents of the hospital. *Grewe v Mount Clemens General Hosp*, 404 Mich 240; 273 NW2d 429 (1978). In *Grewe*, our Supreme Court stated:

> Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. See Anno: *Hospital Liability-Neglect of Doctor*, 69 ALR2d 305, 315-316. However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found. See *Howard v Park*, 37 Mich App 496; 195 NW2d 39 (1972), lv den 387 Mich 782 (1972). See also *Schagrin v Wilmington Medical Center, Inc*, 304 A2d 61 (Del Super Ct, 1973).
>
> In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would

treat him for his problems. A relevant factor in this determination involves the resolution of the question of whether the hospital provided the plaintiff with Dr. Katzowitz or whether the plaintiff and Dr. Katzowitz had a patient-physician relationship independent of the hospital setting. [*Grewe, supra* at 250-251.]

Here, the evidence supports the jury's finding that an agency relationship existed between the radiologists and the hospital. Fahr did not have a patient-physician relationship with the radiologists independent of the hospital setting. Rather, the radiologists just happened to be on duty when Fahr arrived at the hospital. Moreover, the evidence showed that the radiology department is held out as part of the hospital, leading patients to understand that the services are being rendered by the hospital. The proofs support the jury's finding.

VII

Defendant argues that the trial court erred in failing to allow defendant to cross-examine Dr. Sanford on the issue of bias. On the second day of trial, counsel for plaintiff and defendant hospital questioned Dr. Sanford at length. At the start of the next day of trial, it was brought to the court's attention that settlement negotiations were ongoing as to Dr. Sanford. Plaintiff moved to limit counsel for defendant hospital from questioning Dr. Sanford about the negotiations, citing *Brewer v Payless Stations, Inc*, 412 Mich 673; 316 NW2d 702 (1982). Defense counsel responded that, pursuant to MRE 607, he was entitled to attack Dr. Sanford's credibility, but would not pursue the issue if Dr. Sanford responded that there were "no deals."

The court held an evidentiary hearing. Dr. Sanford testified that there had been no agreement by which settlement for the maximum insurance coverage and her testimony adverse to the hospital would be exchanged for dismissal from the case. The trial court stated its satisfaction that the total amount offered was the maximum insurance coverage and that defendant's question to Dr. Sanford in front of the jury would be highly prejudicial.

We find that the trial court did not err in denying defendant the opportunity to question Dr. Sanford about any agreements. The only evidence excluded was that there was none. Moreover, through his questioning, defense counsel improperly sought to imply that there had been a deal. Plaintiff correctly notes that the only bias stemmed from the adverse position of Dr. Sanford and defendant. She was being sued, and her testimony inculpated the radiologists. Defense counsel was given ample opportunity to cross-examine Dr. Sanford as to her credibility following the court's grant of plaintiff's motion in limine.

VIII

Defendant argues that the trial court abused its discretion by refusing to allow the radiologists to be examined upon CT scans other than their own.

Plaintiff sought to exclude any testimony by the three radiologists regarding CT scans or other radiological studies except the ones which they initially read. The basis of the motion was the radiologists' refusal, during discovery, to give opinions on the standard of care or on films other than their own, unless they were compensated. After verifying what

transpired at the depositions, the trial court granted plaintiff's motion.

This court has upheld the exclusion of evidence for failure to provide discovery. *Jackovich v General Adjustment Bureau, Inc*, 119 Mich App 221, 238; 326 NW2d 458 (1982); *Syrowik v Detroit*, 119 Mich App 343, 348; 326 NW2d 507 (1982). Here, the trial court did not abuse its discretion in precluding the testimony. It is clear that the court felt that defendant had violated the spirit of proper discovery. Defendant had required plaintiff to again assemble all persons needed for another deposition, rather than simply placing an objection on the record and responding to the questions posed. No limitations were placed on the testimony of the defense experts, Drs. Irwin and Emsinger. Therefore, any error was harmless. *Syrowik, supra* at 349.

IX

Next, defendant argues that the trial court erred in allowing the jury to consider, compute and award damages to Fahr's minor children beyond their eighteenth birthday. The determination whether an instruction is accurate and applicable to a case is in the sound discretion of the trial court. There is no error requiring reversal if, on balance, the theories and the applicable law were adequately and fairly presented to the jury. *Williams v Coleman*, 194 Mich App 606, 623; 488 NW2d 464 (1992).

The wrongful death act identifies the persons entitled to damages as including "[t]he deceased's spouse, children, descendants, parents, grandparents, brothers and sisters . . . ." MCL 600.2922(3)(a); MSA 27A.2922(3)(a). The damages recoverable are set

forth in MCL 600.2922(6); MSA 27A.2922(6), which provides:

> In every action under this section the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the ·estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). The first criterion in determining intent is the specific language of the statute. *Id.* at 516-517. If the language is clear and unambiguous, judicial construction is neither required nor permitted. *Id.* at 517.

In *Thompson v Ogemaw Co Bd of Rd Comm'rs*,[2] the Supreme Court found that damages for pecuniary injuries suffered by the surviving parents of a minor child could extend beyond the child's minority. The Court stated:

> We do not believe that the age of the child at death (whether before or after majority) is decisive as to consideration of loss of possible future support after the 21st birthday. Nothing in the Michigan statute suggests such a distinction. . . .. The language of the *Judis* [*v Borg-Warner Corp*, 339 Mich 313; 63 NW2d 647 (1954)] and *MacDonald* [*v Quimby*, 350 Mich 21; 85 NW2d 157 (1957)] *Cases* suggest that the test is reasonable expectation of support rather

---

[2] 357 Mich 482; 98 NW2d 620 (1959).

than any particular age at the time of death. [*Thompson,*
*supra* at 489.]

Here, the jury awarded economic damages to Greg
to the age of 20 and to Lindsay to the age of 22. We
find that the plain statutory language permits recov-
ery by the decedent's heirs of the loss of financial
support without regard to age. Moreover, the "pecuni-
ary injury" language of the statute construed in
*Thompson* is analogous to the clearer "loss of finan-
cial support" language of the current statute. The Leg-
islature is presumed to act with knowledge of appel-
late court statutory interpretations. *Gordon Sel-Way,
Inc v Spence Bros, Inc,* 438 Mich 488, 505; 475 NW2d
704 (1991). Therefore, knowing the Supreme Court's
interpretation, the Legislature chose not to include
any language limiting damages for financial support
to the time where children reach the age of majority.
We must assume that the Legislature sanctioned the
Court's interpretation. *Smith v Detroit,* 388 Mich 637,
650; 202 NW2d 300 (1972). The fact that *Thompson*
involved support from a child rather than to a child
does not require a different result.

X

Defendant argues that the trial court erred in refus-
ing to reduce the jury's award of future damages to
present value. This issue has no merit. Defense coun-
sel specifically requested that the jury be instructed
to reduce future damages to present cash value. MCL
600.6306; MSA 27A.6306. The trial court instructed the
jury as requested and the jury verdict appears already
to have been reduced. Defendant is not entitled to
have the jury verdict reduced a second time.

Next, defendant argues that, based on *Falcon,*
*supra,* plaintiff's total damage award should be
reduced by forty percent because, at best, Fahr had
only a sixty percent chance of survival. Defendant did
not request an instruction to reduce damages based
on *Falcon.* Therefore, the issue is not preserved for
appeal. *Gore v Rains & Block,* 189 Mich App 729, 741;
473 NW2d 813 (1991). We do not find any manifest
injustice in the jury instructions. *Id.*

XI

Plaintiff argues on cross appeal that the trial court
erred in denying plaintiff's motion for additur or a
new trial as to damages. The jury did not award any
damages for pain and suffering or mental anguish.
Moreover, plaintiff alleges that the award for loss of
society and companionship was inadequate.

We must accord due deference to the trial court's
decision regarding the grant or denial of additur. We
will reverse only if an abuse of discretion is shown.
*Arnold v Darczy,* 208 Mich App 638, 639; 528 NW2d
199 (1995). Additionally, trial courts have discretion
in granting a new trial, and appellate courts will not
interfere absent a palpable abuse of discretion. *Id.*

The proper consideration when reviewing a grant
or denial of additur is whether the jury award is sup-
ported by the evidence. *Id.* at 640. The trial court's
inquiry is limited to objective considerations regard-
ing the evidence adduced and the conduct of the trial.
*Palenkas v Beaumont Hosp,* 432 Mich 527, 532; 443
NW2d 354 (1989); *Wilson v General Motors Corp,* 183
Mich App 21; 454 NW2d 405 (1990).

After carefully reviewing the record, we cannot say
that the trial court abused its discretion in denying

additur. It is undisputed that Fahr had cancer before she went to any of the health providers and that defendant did not cause the cancer. Fahr missed a few appointments with Dr. Sanford and waited approximately five months before she sought a doctor's advice after noticing the initial soreness. Importantly, plaintiff was awarded compensation for Fahr's loss of a chance to survive which was proximately caused by defendant.

The jury's award reflects a determination that the conscious pain and suffering was a result of the cancer, not a misdiagnosis. The trial court presided over the lengthy trial, observed the evidence and witnesses and had the unique opportunity to evaluate the jury's reaction to the witnesses and proof. We cannot say that it abused its discretion. *Palenkas, supra.* Also, we cannot conclude that the trial court abused its discretion in denying additur to the award of loss of society and companionship.

XII

Plaintiff argues, additionally, that the trial court erred in submitting the issue of comparative negligence to the jury, as the evidence does not establish that Fahr's conduct was negligent. However, the issue is not preserved for appeal, because plaintiff failed to object to the instruction at the trial court level. In fact, plaintiff's counsel advised the court, "I would . . . ask this Court for a directed verdict as to liability [and] ask the jury then, in turn, to go directly to the damages and comparative negligence aspect of the form." Plaintiff's counsel drafted the verdict form. Therefore, we will not review the issue further.

Affirmed.