*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COLLEEN LAVALLEY and ROBERT
LAVALLEY,

        Plaintiffs-Appellants,

v

ST. MARY MERCY HOSPITAL, also known as
TRINITY HEALTH-MICHIGAN, FREEDOM
MEDICAL CLINIC, PC, and JAY M. DAITCH,
M.D.,

        Defendants-Appellees,

and

MICHIGAN NEURODIAGNOSTICS, PC,
and SALEEM TAHIR, M.D.,

        Defendants.

UNPUBLISHED
December 22, 2020

No. 348790
Wayne Circuit Court
LC No. 17-007708-NH

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

RONAYNE KRAUSE, J. *(concurring in part and dissenting in part)*

        I concur with the majority's affirmance of the trial court's dismissal of plaintiffs' claims against Freedom Medical Clinic, PC (FMC), Dr. Jay M. Daitch, and St. Mary Mercy Hospital (SMMH) on the basis of the conduct of Dr. Daitch. I concur almost entirely with the majority's reasoning regarding those claims, but I would not address plaintiffs' prior attorney's 2015 letter, because, for the reasons discussed by the majority, doing so is unnecessary. I respectfully dissent from the majority's affirmance of plaintiff's claims against SMMH on the basis of conduct by Dr. Saleem Tahir. I would reverse the trial court's grant of summary disposition in favor of SMMH for vicarious liability based on an ostensible agency relationship between SMMH and Dr. Tahir, and I would remand for further proceedings.

-1-

As the majority observes, hospitals are *generally* not liable for negligence committed by independent contractors, and agency by estoppel is not established *merely* because a patient received medical treatment in a hospital. *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250-251; 273 NW2d 429 (1978). "However, if the individual looked to the hospital to provide him with medical treatment *and* there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found." *Id*. (emphasis added). Subsequent cases have emphasized the importance of some kind of representation by the hospital. *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991); *VanStelle v Macaskill*, 255 Mich App 1, 11; 662 NW2d 41 (2003). However, *Grewe* distinguished between looking to the hospital to provide treatment and looking to the hospital to provide a mere situs for the location of treatment; it also distinguished whether the hospital provided the doctor or the patient utilized his or her own doctor. *Grewe*, 404 Mich at 251.[1] Furthermore, in *Chapa*, this Court observed that although the hospital "must have done something" to create a reasonable belief of agency, that "something" could be an act or an omission. *Chapa*, 192 Mich App at 33-34.

Notably, in *Chapa*, the doctor at issue was arranged by the patient's family and had directly seen and billed the patient for several years previously. *Chapa*, 192 Mich App at 34, 37. In *VanStelle*, the alleged malpractice took place at a private office that happened to have been owned by one of the hospital-defendants, and there was no evidence the plaintiffs truly looked to either hospital-defendant for treatment. *VanStelle*, 255 Mich App at 11-19. In *Grewe*, our Supreme Court thought it important that where the patient went to a hospital and expected to be treated by the hospital, there was "nothing in the record which should have put the plaintiff on notice that [the doctor] was an independent contractor as opposed to an employee of the hospital." *Grewe*, 404 Mich at 253. This Court has upheld finding an ostensible agency relationship where the doctor had no independent physician-patient relationship with the patient outside of the hospital setting; and because the doctor was a radiologist and the hospital held out its radiology department as part of the hospital, patients would understand that radiology services were rendered by the hospital. *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 603; 568 NW2d 93 (1997).

As plaintiff points out, the patient in *Setterington* was deceased and thus unable to testify as to her subjective belief, *Setterington*, 223 Mich App at 599, so the Court looked to the objective evidence. Likewise, the evidence here shows that Colleen was essentially unconscious or insensate during the alleged malpractice, so we should likewise look to the other available evidence. In any event, parties are generally entitled to the benefit of the evidence, even where they might have expressed a conflicting opinion. *Ortega v Lenderink*, 382 Mich 218, 223; 169 NW2d 470 (1969).

Importantly, Colleen went to SMMH for emergency treatment. It is a matter of common knowledge that, as a general matter, going to the emergency room entails seeking treatment *by* the hospital; in contrast, going to the hospital for a consultation or an elective procedure might entail seeking treatment by a doctor *at* the hospital. Thus, SMMH was not merely the "situs" of

---

[1] In *VanStelle*, this Court also distinguished between merely going to a hospital to receive medical care, and "looking to" the hospital to provide that medical care. *VanStelle*, 25 Mich App at 11.

treatment, even if Colleen's personal oncologist, Dr. Naik, rendered some of that treatment. As was the case in *Setterington* and *Grewe*, both of which found that there was an ostensible agency relationship, plaintiffs had no relationship with Dr. Tahir outside of the hospital setting. Defendants point out that Dr. Tahir was summoned at the request of Dr. Naik. However, Dr. Tahir is a neurologist, and, analogous to the hospital in *Setterington*, SMMH seemingly holds itself out as providing "neurosciences" care.[2] In *Setterington* this Court observed that where the hospital's radiology department was "held out as part of the hospital," that would "lead[] patients to understand that the [radiology] services are being rendered by the hospital." *Setterington*, 223 Mich App at 603.

Under the circumstances, I would find the evidence sufficient to show that plaintiffs looked to SMMH to provide treatment, rather than to provide the mere situs of treatment. I would find the evidence sufficient to create a question of fact whether plaintiffs would have reasonably believed Dr. Tahir, a neurologist on duty at a hospital holding itself out as providing neurology services, to be an employee of the hospital. *Grewe* necessarily implies that hospitals may, under some circumstances, be obligated to affirmatively dispel a reasonable presumption that a particular doctor is an employee. I therefore respectfully disagree with the majority that, under the circumstances, it was necessary for the consent forms to state that Dr. Tahir *was* an agent of the hospital; rather, it is important that the forms did not provide any indication that Dr. Tahir was *not* an agent of the hospital. See *Grewe*, 404 Mich at 253.

I would reverse the trial court's grant of summary disposition in favor of SMMH for vicarious liability based on an ostensible agency relationship between SMMH and Dr. Tahir, and I would remand that claim for further proceedings. In all other respects, apart from the majority's discussion of the 2015 letter from plaintiff's prior counsel, I concur with the majority.

/s/ Amy Ronayne Krause

---

[2] < https://www.stjoeshealth.org/find-a-service-or-specialty/neurosciences/ >