*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DONALD KACZMARCZYK, by
LOUISE KACZMARCZYK, Personal
Representative,

       Plaintiff-Appellee,[1]

v

DEARBORN SURGERY CENTER,

       Defendant-Appellant,

and

JUDITH NAGY, D.O.,

       Defendant.

UNPUBLISHED
September 2, 2021

No. 353972
Wayne Circuit Court
LC No. 18-015126-NH

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

---

[1] This opinion will refer to the Estate of Donald Kaczmarczyk as "plaintiff."

-1-

Defendant[2] appeals by leave granted[3] the order denying defendant's motion for summary disposition under MCR 2.116(C)(10), in this medical malpractice litigation. We reverse and remand for entry of summary disposition in defendant's favor.

## I. FACTUAL BACKGROUND

This case arises out of the death of Donald Kaczmarczyk on May 24, 2016, from purported complications of anesthesia administration in surgery. Before the surgery, Donald signed a consent form provided by defendant that stated, in part, that "the physicians providing services to me, including but not limited to, the surgeon, anesthesiologist, radiologist and pathologist are independent contractors with me and are not employees or agents of the Surgery Center or the Hospital." Donald also signed a Consent for Anesthesia Administration form that required him to consent to the "administration of anesthesia as determined necessary and advisable by a member of the Department of Anesthesia."

Plaintiff, the Estate of Donald Kaczmarczyk, by Louise Kaczmarczyk as personal representative, filed a complaint asserting that Dr. Judith Nagy, Donald's anesthesiologist during the surgery at issue, had committed medical malpractice. Plaintiff claimed defendant was vicariously liable for Dr. Nagy's alleged malpractice because she was an employee or ostensible agent of defendant.[4] Defendant moved the trial court for summary disposition, arguing the lack of any genuine issue of material fact that, at the time of the incident at issue, Dr. Nagy was not an employee or agent of defendant. In denying defendant's motion for summary disposition, the trial court relied primarily on the consent for anesthesia form, reasoning that it controlled over the more general consent for treatment form. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "When reviewing a motion under MCR 2.116(C)(10), this Court 'must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in favor of the party opposing the motion.' " *Williamstown Twp v Sandalwood Ranch*, LLC, 325 Mich App 541, 547 n 4, 927 NW2d 262 (2018), citing *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). Summary disposition is appropriate under MCR 2.116(C)(10) when the proffered evidence fails to establish a genuine

---

[2] Dr. Judith Nagy has settled with plaintiff, and thus, the only claims remaining are against defendant, Dearborn Surgery Center. Therefore, this opinion's use of the term "defendant" refers only to Dearborn Surgery Center.

[3] *Estate of Donald Kaczmarczyk v Dearborn Surgery Ctr*, unpublished order of the Court of Appeals, entered September 22, 2020 (Docket No. 353972).

[4] Plaintiff later acknowledged in its answer to defendant's motion for summary disposition that Dr. Nagy was not an employee of defendant, but continued to claim that she was an ostensible agent of defendant.

issue of material fact; the moving party is therefore entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. LAW AND ANALYSIS

Defendant asserts the trial court erred in denying its motion for summary disposition because there was insufficient evidence for reasonable jurors to conclude that Dr. Nagy was an ostensible agent of defendant. We agree.

Hospitals are generally not vicariously liable for the negligence of a physician who is an independent contractor who simply uses the hospital's facilities to provide medical treatment. *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978); *Vanstelle v Macaskill*, 255 Mich App 1, 8; 662 NW2d 41 (2003). "However, if the patient looked to the hospital to provide medical treatment and the hospital made a representation that medical treatment would be afforded by physicians working at the hospital, an agency by estoppel may be found." *Id*. "[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Grewe*, 404 Mich at 251. A hospital is not liable for the malpractice of independent contractors "merely because the patient 'looked to' the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital. Such a holding would . . . be illogical . . . ." *Chapa v St. Mary's Hosp*, 192 Mich App 29, 33; 480 NW2d 590 (1991).

Michigan caselaw has distilled the inquiry regarding ostensible agency into a three-factor test, all three of which are required to establish an ostensible agency. Specifically:

> (1) [T]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence. [*Chapa*, 192 Mich App at 33-34, citing *Grewe*, 404 Mich at 252-253.]

In other words, "the defendant as the putative principal must have done something that would create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *VanStelle*, 255 Mich App at 10, citing *Chapa*, 192 Mich App at 34. "[A]gency does not arise merely because one goes to a hospital for medical care. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *VanStelle,* 255 Mich App at 11, quoting *Sasseen v Community Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1986). Therefore, "[a]n agency is ostensible when the principal . . . causes a third person to believe another to be his agent who is not really employed by him." *Grewe*, 404 Mich at 252.

In addition, "a relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the doctor] whether the plaintiff and [the doctor] had a patient-physician relationship independent of the hospital setting." *Grewe*, 404 Mich at 251. "[A]n independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital

override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital." *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002), citing *Hinkelman v Borgess Med Ctr*, 157 Mich App 314, 323, 403 NW2d 547 (1987); *Strach v St John Hosp Corp*, 160 Mich App 251, 263, 408 NW2d 441 (1987).

An examination of the three *Grewe* factors outlined above lead us to conclude that the trial court erred in denying defendant's motion for summary disposition. While the third *Grewe* factor is satisfied because there is no indication or assertion that Donald (the person relying on the agent's authority) was guilty of negligence, *Chapa*, 192 Mich App at 33-34, the first and second *Grewe* factors are not satisfied.

The first *Grewe* factor requires that "the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one." *Chapa*, 192 Mich App at 33-34. There is no evidence that Donald believed Dr. Nagy was an agent of defendant, nor is there evidence that—had he held such a belief—his belief was reasonable. The fact that Dr. Nagy used defendant's facility to provide treatment does not automatically mean that she was defendant's agent. In *Vanstelle*, for example, this Court determined that the fact a doctor had staff privileges at a hospital was insufficient to establish an agency relationship. *Vanstelle*, 255 Mich App at 11, 17.

Plaintiff argues that Dr. Nagy's curriculum vitae (CV), which lists her as having previously worked as a "Staff Anesthesiologist" at defendant, and Dr. Nagy's procedure notes on paper carrying defendant's logo suggest she was an agent of defendant. This Court addressed a similar argument in *Vanstelle*, where the plaintiff argued that the doctor's business card, which contained references to the hospital at issue, meant that he was an agent of that hospital. *Vanstelle*, 255 Mich App at 15. We found that, because the patient never saw the business card, and because other information on the business card suggested that he was not an agent of the hospital, there was no ostensible agency. *Id.* Here, there is no assertion that Donald ever saw Dr. Nagy's CV or procedure notes and there is no indication that Dr. Nagy, or anyone else, told Donald she was an agent or employee of the hospital. The first *Grewe* factor has thus not been met. Since all three *Grewe* factors must be met, that, alone, would be sufficient to find that defendant was entitled to summary disposition. However, the second *Grewe* factor has also not been met.

The second *Grewe* factor requires the belief the provider is an agent of the principal "must be generated by some act or neglect on the part of the principal sought to be charged." *Chapa*, 192 Mich App at 33-34. In other words, defendant "must have done something that would create in [Donald's] mind the reasonable belief that [Dr. Nagy was] acting on behalf of . . . defendant . . . ." *VanStelle*, 255 Mich App at 10.

Here, plaintiff went to the hospital for a surgery scheduled by his general surgeon; he did not simply present himself at the hospital for treatment by anyone who happened to be there. The hospital was merely the situs for plaintiff's general surgeon to treat him. This is not a case like *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 598; 568 NW2d 93 (1997) where the patient, concerned about a lump in her thigh, apparently went to the hospital of her own volition and had a CT scan performed there.

-4-

More importantly, there is no indication that the hospital made representations that any anesthesiologist used by plaintiff's general surgeon was an employee or agent of the hospital. Neither defendant, nor Dr. Nagy, are asserted to have represented to Donald that Dr. Nagy was an agent of defendant and Dr. Nagy testified that she was employed by a third party who had an independent contractor relationship with the hospital. Moreover, as previously indicated, before receiving treatment, Donald signed a consent form explicitly acknowledging that the anesthesiologist and other treating physicians were independent contractors and not agents of the hospital.

The trial court, however, chose to give more weight to a consent to anesthesia form that Donald also signed. That form contained a statement that Donald authorized and consented to "the administration of anesthesia as determined necessary and advisable by a member of the Department of Anesthesia." The trial court found that the more specific consent to anesthesia form trumped the more general consent to medical treatment. This is not, however, an issue of statutory interpretation, where the specific provision controls over a general provision. See, e.g., *Parise v Detroit Entmt, LLC*, 295 Mich App 25, 27–28; 811 NW2d 98 (2011) ("When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute.").

The trial court failed to explain why the anesthesia consent form controls or why it renders the general form meaningless. In fact, the consent to medical treatment form is arguably more specific than the consent to anesthesia form in regard to the specific issue of ostensible agency, since the consent to anesthesia form merely discusses certain details of the anesthesia process, while the consent to medical treatment form repeatedly discusses the physicians who will be providing care, their responsibilities to the patient, and their relationship to defendant. Moreover, the consent to anesthesia form does not suggest that Dr. Nagy—or any other medical care professional—is an agent or employee of defendant. It merely authorizes the administration of anesthesia as determined by the Department of Anesthesiology. In addition, plaintiff's reliance on the consent to anesthesia form's statement that Donald would be cared for by a member of the "Department of Anesthesia" fails to acknowledge that the Department could be staffed by independent contractors like Dr. Nagy, a fact that was expressly stated in the consent to medical treatment form. By prioritizing the consent to anesthesia form over the consent to medical treatment form, the trial court failed to acknowledge the full circumstances presented to Donald.

Plaintiff argues that, because Donald "looked to" defendant for medical care, an agency relationship exists. *VanStelle*, 255 Mich App at 8. However, plaintiff fails to note that this "looking to" must be accompanied by a representation by the hospital in question that treatment would be afforded by physicians working at that hospital. *Id*. There is no allegation that any such representations were made in this case. As this Court has stated, a hospital is not liable for the malpractice of independent contractors "merely because the patient 'looked to' the hospital at the time of admission . . . ." *Chapa*, 192 Mich App at 33.

For these reasons, there is no genuine issue of material fact regarding whether Dr. Nagy is an agent of defendant, and defendant is, therefore, not vicariously liable for Dr. Nagy's alleged malpractice. The trial court erred when it concluded there was a genuine issue of material fact and denied summary disposition to defendant.

We reverse and remand to the trial court for entry of summary disposition in defendant's favor. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly