# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIE VAN DYKE,

Plaintiff-Appellant,

v

CRYSTAL THOMAS COLLINS and STATE
FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,

Defendants-Appellees.

UNPUBLISHED
March 17, 2016

No. 324534
Wayne Circuit Court
LC No. 12-008801-NI

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right the order dismissing plaintiff's first-party and third-party claims in this no-fault automobile negligence action. Plaintiff also challenges a multitude of earlier, interim rulings by the trial court involving the exclusion of evidence, witnesses, and claims proposed by plaintiff. We affirm.

Plaintiff contends the trial court erred in precluding testimony from various doctors and the related evidence pertaining to his alleged closed head injury. Plaintiff further asserts error by the trial court in the exclusion of evidence of his proffered wage loss, excess wage loss, and lost future earning capacity and attendant care claims. In addition, plaintiff challenges the trial court's determination regarding the exclusion of claims for the payment of services provided by Tri-County Transportation and Excel Cognitive Therapy, premised on the dismissal of a separate lawsuit for payment for the same charges as res judicata.

The grant or denial of a motion for summary disposition is reviewed de novo. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Corley v Detroit Bd*

-1-

*of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004) (citations and quotation marks omitted)].

The applicability of the legal doctrines of res judicata and collateral estoppel present a question of law subject to de novo review. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "A trial court's [preserved] evidentiary decisions . . . are reviewed for an abuse of discretion." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 541; 854 NW2d 152 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

Initially, plaintiff's assertion of error regarding the dismissal of his attendant care claims is without merit. Although attendant care costs were pleaded in the initial complaint, plaintiff thereafter failed to raise the issue or present any evidence in support of his claim. Plaintiff acknowledged at the July 7, 2014 pretrial conference that he could not reasonably argue the attendant care costs asserted. Waiver is the intentional and voluntary relinquishment of a known right. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). Based on plaintiff's acknowledgement in the lower court that his claim for attendant care benefits was unsustainable, the issue is waived.

In addition, on appeal, plaintiff has failed to present any argument, evidence, or legal authority to support a claim of error on this issue. Hence, plaintiff has abandoned the issue of attendant care benefits and entitlement to their payment based on his failure to adequately brief the issue. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004). As is widely recognized, a party is not permitted "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Plaintiff's assertion of error regarding the dismissal of his attendant care claims is without merit.

Similarly, plaintiff's assertion of error regarding the dismissal of his claim for payment for services billed and provided by Tri-County Transportation and Excel Cognitive Therapy is without merit. It is undisputed that the referenced service providers filed a separate lawsuit for the same charges referenced by plaintiff and that the separate lawsuit was dismissed for the failure of the service providers to comply with court-ordered discovery. The trial court indicated the separate lawsuit was dismissed as a sanction in accordance with MCR 2.313, for the failure to comply with three discovery orders issued by the trial court in that matter. The dismissal of an action premised on a party's failure to comply with the court rules or a trial court's orders is authorized by MCR 2.504(B)(1). In accordance with MCR 2.504(B)(3), "Unless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication on the merits."

"The doctrine of res judicata bars a subsequent action when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Estes*, 481 Mich at 585. Res judicata is intended "to ensure the finality of judgments and to prevent repetitive litigation." *Bergeron v Busch*, 228 Mich App 618, 621; 579 NW2d 124 (1998). Using due diligence, if a plaintiff should have brought the claim in the previous case, then res judicata will apply. *Estes*, 481 Mich at 585. If the same facts or evidence are applicable in both cases, the two actions are deemed to be the same for purposes of res judicata. *Adair v Michigan*, 470 Mich 105, 124; 680 NW2d 386 (2004).

The requirements for the imposition of res judicata were established. As discussed above, the dismissal of the action constituted a decision on the merits for purposes of res judicata. MCR 2.504(B)(3). The payment sought is for the cost of services provided by Tri-County Transportation and Excel Cognitive Therapy to plaintiff. The costs to be reimbursed are identical in the litigation initiated by the service providers and encompassed by plaintiff's claims. Because the same issue was presented in both lawsuits and arose out of the same facts, it could have been resolved in the litigation initiated by the service providers. Finally, " 'privity' has been defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.' " *Sloan v Madison Hts*, 425 Mich 288, 295; 389 NW2d 418 (1986) (citation omitted).

> A privy includes one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase. In order to find privity to exist between a party and non-party, Michigan courts require 'both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation.' " [*Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 12-13; 672 NW2d 351 (2003)(citations omitted).]

The interests of plaintiff, Tri-County Transportation, and Excel Cognitive Therapy were aligned in seeking to procure reimbursement for the services rendered. The outcome of the litigation initiated by the services providers encompassed the interests of plaintiff in procuring the payment of the benefits, thus demonstrating the existence of the requisite "functional relationship" for the invocation of res judicata. Accordingly, plaintiff's claim for payment for services billed and provided by Tri-County Transportation and Excel Cognitive Therapy fails.

This leads to an examination of the gravamen of the matter—whether plaintiff can establish causation and the existence of a closed head injury sufficient to sustain his first-party and third-party automobile negligence damages claims. Defendants argued that plaintiff could not offer appropriate expert testimony demonstrating that he sustained a serious neurological or closed head injury. MCL 500.3135(2)(a) provides:

> The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. *However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.* [Emphasis added.]

Dr. James Beale, an orthopedic surgeon, indicated in his medical notes for plaintiff a closed head injury diagnosis related to the motor vehicle accident. Beale was never deposed, despite repeated attempts close to the adjourned trial date, and was not available on the date of trial due to health issues. Plaintiff did not secure an affidavit from Beale regarding this diagnosis and the trial court indicated the need to conduct an evidentiary hearing to verify Beale's qualifications to render the diagnosis asserted and the extent of the injury claimed. As discussed in *Churchman v Rickerson*, 240 Mich App 223, 229; 611 NW2d 333 (2000), "to give effect to the phrase 'serious neurological injury,' we must conclude that the closed-head injury provision of § 3135 requires more than a diagnosis that a plaintiff has sustained a closed-head injury." "[T]he plain language of the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe." *Id.* at 230. The requisite testimony necessary to sustain plaintiff's claim under MCL 500.3135(2)(*ii*) was never secured by plaintiff during discovery or the course of the litigation despite the opportunities provided through various orders issued by the trial court and the grant of several adjournments.

This does not, however, provide the only means for plaintiff to establish the existence of a factual dispute requiring resolution by a jury. As explained by the *Churchman* Court:

The language of § 3135 does not indicate, however, that the closed-head injury exception provides the exclusive manner in which a plaintiff who has suffered a closed-head injury may establish a factual dispute precluding summary disposition. In the absence of an affidavit that satisfies the closed-head injury exception, a plaintiff may establish a factual question under the broader language set forth in subsection 3135(2)(a)(*i*) and (*ii*), which, as noted above, provide that whether an injured person has suffered serious impairment of body function is a question for the court unless the court finds that "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or, if the court finds that there is such a factual dispute, that "dispute is not material to the determination as to whether the person has suffered a serious impairment of body function. . . ." This Court has recently held that a trial court cannot determine whether a plaintiff has suffered a serious impairment of body function and enter judgment in favor of a defendant as a matter of law without first making the factual findings required under subsections 3135(2)(a)(*i*) or (*ii*). *May v Sommerfield*, 239 Mich App 197, 202; 607 NW2d 422 (1999). [*Churchman*, 240 Mich App at 232.]

Plaintiff argued that the report authored by Jennifer Zoltowski, M.S. created a factual dispute sufficient to present to a jury. State Farm and Collins objected to Zoltowski's report, asserting her credentials were insufficient to establish the requisite level of expertise based on the failure to demonstrate the necessary level of supervision. Specifically, the parties disputed Zoltowski's credentials under MCL 333.18223(2). The trial court never specifically ruled on the admissibility of Zoltowski's report or testimony. It is notable that Zoltowski opined that a more thorough neuropsychological assessment was necessary and that other factors, such as plaintiff's abuse of prescribed medications, could be impairing his abilities; the report did suggest impairments in functioning by plaintiff but did not definitively attribute those impairments to his motor vehicle accident other than through the self-report of plaintiff. Although a doctoral level psychologist did not co-sign Zoltowski's report, it was copied to such a credentialed clinician suggesting or implying a level of supervision.

Despite numerous opportunities, plaintiff failed to present a witness, with the requisite qualifications, to establish both the causation requirement for his claims and the threshold severity of the claimed injury. Beale's report provided a diagnosis of "closed head injury" but did not address severity or definitively establish causation to plaintiff's motor vehicle accident. To overcome these deficiencies, plaintiff repeatedly attempted, belatedly in the litigation, to name additional expert witnesses, including Bradley Sewick, Ph.D. and Dr. Shyam Rao. The trial court foreclosed the presentation of these witnesses citing the prolonged period between the close of discovery and plaintiff's attempt to include these witnesses and, at least initially, the lack of any documentation or affidavits regarding their proposed testimony. In accordance with MCR 2.401(I)(2), "The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." The qualification of a witness to serve as an expert and the admissibility of that expert's testimony are matters within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Tobin v Providence Hosp*, 244 Mich App 626, 654; 624 NW2d 548 (2001). Witness lists comprise "an element of discovery" and are designed to avoid "trial by surprise." *Grubor Enterprises v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). It is permissible for a court to exclude evidence as a sanction for failing to provide discovery, and this Court has upheld such decisions by a trial court. *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 605; 568 NW2d 93 (1997).

Plaintiff was given multiple opportunities by the trial court to obtain the records of physicians and to amend his witness list. Plaintiff did not take advantage of the trial court's favorable rulings by failing to submit amended witness lists within the time constraints provided by the trial court and by not adhering to the restrictions for the production of medical documentation established by the trial court. Plaintiff sought to add Sewick as a treater in May 2014, even before plaintiff had actually received a report. By this time discovery had long been closed. Sewick did not actually treat plaintiff, but performed an evaluation. The trial court permitted plaintiff to amend his witness list to include Dr. Diane Levine and Dr. Brian Inge, but despite having received permission, plaintiff inexplicably did not depose these individuals and did not provide documentation from Dr. Levine until very close to the trial date. Plaintiff contended that his identification of Inge was in error and that Dr. Rao should be listed in his stead, but again this did not occur until October 2014. Further, plaintiff merely made oral assertions regarding Rao's proposed testimony but offered no documentation or affidavit to substantiate any claim regarding evidence that would be forthcoming from this individual.

-5-

Accordingly, the trial court did not abuse its discretion in denying plaintiff's request to add the proffered witnesses.

Plaintiff also disputes the trial court's dismissal of his wage loss claims. MCL 500.3107(1) provides, in relevant part:

[P]ersonal protection insurance benefits are payable for . . .

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. . . . Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his or her claim reasonable proof of a lower value of the income tax advantage in his or her case, in which case the lower value shall apply. For the period beginning October 1, 2012 through September 30, 2013, the benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $5,189.00, which maximum shall apply pro rata to any lesser period of work loss. . . .

As recognized in *Sullivan v North River Ins Co*, 238 Mich App 433, 437; 606 NW2d 383 (1999), "the claimant bears the burden of proof of actual loss of earnings."

Plaintiff failed to produce evidence of wage loss. Plaintiff provided a partial income tax return for a period two to three years before the accident occurred. The remainder of plaintiff's documentation of wage loss comprised various bank accounts, invoices and registers evidencing unidentified deposits and withdrawals pertaining to his businesses, but failing to clarify, in any manner, figures from which his work loss could be calculated or determined. Work loss damages do not encompass lost earning capacity. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 647; 513 NW2d 799 (1994). Lost earning capacity is defined as what an injured person could have earned but for the accident. In contrast work loss is what an injured party would have earned but for the accident. *Id.* at 645.

In accordance with case law, specific proof is necessary to demonstrate how much money a person would have made to be eligible for work loss damages. See *Swartout v State Farm Mut Auto Ins Co*, 156 Mich App 350, 354; 401 NW2d 364 (1986). Our Supreme Court has cautioned:

Because work-loss damages are intended to replace the income a person would have received but for the accident, *prior* wages generally are the most relevant and reliable evidence for determining what a plaintiff actually would have earned had the accident not occurred. Only in certain circumstances may a plaintiff recover work-loss damages for wages he or she could not have earned before the accident, i.e., wages that are not based on the plaintiff's wage history. While the statute by its terms does not limit a plaintiff's work-loss award to the plaintiff's wages at the time of the accident, courts must be cautious in considering wages

that the plaintiff could not have earned before the accident in calculating a work-loss award because of the risk that a calculation based on such wages will be contingent and speculative and, therefore, barred under Michigan law. [*Hannay v Dep't of Transp*, 497 Mich 45, 82; 860 NW2d 67 (2014) (citations omitted).]

Plaintiff's submission of documentation lacked specificity and proof of its relationship to plaintiff's actual work loss. His claim of work loss damages was properly excluded by the trial court as being too speculative for submission to a jury for consideration.

Although plaintiff indicated that he would present a financial expert, Kirk McKinder, to clarify the records and provide more definitive figures for his wage loss claim, the trial court ultimately precluded McKinder as an expert witness. Contrary to plaintiff's contention, the trial court's exclusion of this witness was not an abuse of discretion. Plaintiff was aware, as early as August 15, 2013, that State Farm was disputing the wage loss claim premised on plaintiff's failure to meet his burden of proof. The trial court, on March 19, 2014, indicated that the records submitted by plaintiff were confusing but that it would permit plaintiff to secure an accountant to procure further clarity. Plaintiff was also warned, however, that State Farm could renew its motion pending the failure to obtain clarity regarding these records and that time was of the essence. In May 2014, plaintiff included McKinder as an expert witness, yet had failed to supplement the documentation on wage loss or provide any indication of McKinder's qualifications or proposed testimony either through an affidavit or report. In June 2014, the trial court conducted a hearing on the objections to McKinder and dismissed the claims premised on plaintiff's failure to provide any substantiation of his wage loss claims. Consequently, based on his inability to demonstrate a wage loss claim, his excess wage loss and future wage loss claims were also dismissed premised on the absence of proofs.

As discussed in *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126; 732 NW2d 578 (2007) (citations and quotation marks omitted):

Before a trial court may admit any expert testimony, the trial court is required by MRE 702 to ensure that each aspect of an expert witness's proffered testimony—including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that data—is reliable. While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither abandon this obligation nor perform the function inadequately. [Citations and internal quotation marks omitted.]

Expert testimony cannot be premised on mere speculation, "[t]here must be facts in evidence to support the opinion testimony of an expert." *Teal v Prasad*, 283 Mich App 384, 394-395; 772 NW2d 57 (2009). In this instance, plaintiff's offer of medical and financial experts in support of his claims was too little, too late. Plaintiff's identification of particular witnesses came long after the close of discovery and in close proximity to trial dates. While plaintiff named certain individuals to serve as experts he provided no relevant information to support their testimony such as examination by deposition, affidavits, or even a report or record generated by the proposed witness to support plaintiff's contention regarding the content of their potential testimony. Plaintiff was made keenly aware by the trial court of the need to timely identify his witnesses and given the opportunity to supplement the documents to support his claims, but

failed to do so on repeated occasions. Plaintiff's ongoing requests to add witnesses comprised an ill-disguised attempt to prolong or re-open discovery in this matter. The trial court, in excluding the witnesses considered "whether the granting of discovery [would] facilitate or hamper the litigation." *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990). "Factors such as the timeliness of the request, the duration of the litigation and the possible prejudice to the parties should also be considered." *Id.*

The litigation was initiated in 2012, approximately one year after the accident occurred. Multiple trial adjournments occurred, many at the behest of plaintiff, who was permitted by the trial court to amend or supplement his financial and medical documentation and witnesses. Despite being given these opportunities, plaintiff failed to supplement documentation, present witnesses for deposition or even provide affidavits. As such, and as acknowledged by plaintiff, he lacked the requisite proof of causation and damages. Based on the trial court's having granted plaintiff multiple extensions for the trial date, the opportunity to supplement his witness lists and documentation, the duration of the case and the uncertainty inherent in the proofs offered, the trial court did not abuse its discretion in the preclusion of witnesses and evidence.

Affirmed. Defendant, the prevailing party, may tax costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

-8-