VANSTELLE v MACASKILL

Docket Nos. 229123, 236435. Submitted September 4, 2002, at Detroit. Decided January 14, 2003, at 9:00 A.M.

Virginia VanStelle, individually and as next friend for Robert P. VanStelle, brought an action in the Wayne Circuit Court alleging two distinct acts of medical malpractice against various defendants with regard to medical treatment received by Robert VanStelle: one occurring at defendant Bon Secours Hospital and one occurring at defendant Riverview Medical Offices where defendant Dr. Tha U, a neurologist and employee of defendant Michigan Neurology Associates, P.C. (MNA), performed an examination of Mr. VanStelle. The plaintiffs were referred to Dr. U by defendant D. Douglas Macaskill, D.O., an emergency room physician at Bon Secours Hospital. Defendants St. John Health System—Detroit-Macomb Campus, doing business as St. John Riverview Hospital and Medical Center; Riverview Medical Offices; and Detroit Riverview Hospital (hereafter the Riverview defendants) and defendants St. John Health Systems and St. John Hospital and Medical Center (hereafter the St. John defendants) moved for summary disposition. The court, Edward M. Thomas, J., denied the motions. The Riverview defendants appealed by leave granted (Docket No. 229123) from the denial of their motion. The St. John defendants appealed by leave granted (Docket No. 236435) from the denial of their motion. The appeals were consolidated.

The Court of Appeals *held*:

1. A hospital generally is not vicariously liable for the negligence of a physician who is an independent contractor and simply uses the hospital's facilities to provide treatment to his patients. However, if the patient looked to the hospital to provide medical treatment and the hospital made a representation that medical treatment would be afforded by physicians working at the hospital, an agency by estoppel may be found.

2. An agency does not arise merely because a person goes to a hospital for medical care. There must be some action or representation by the hospital to lead the person to reasonably believe an agency in fact existed. The sole fact that a doctor used a hospital's

facilities to treat a patient is not sufficient to give the patient a reasonable belief that the doctor was an agent of the hospital.

3. The plaintiffs have not alleged any abuse of corporate form that would warrant piercing the corporate veil and not treating the defendant parent and subsidiary corporations as separate and distinct entities.

4. The sole fact that the Riverview defendants' office facilities were leased to defendant MNA and used by Dr. U is not a sufficient act by the Riverview defendants to create the appearance that Dr. U was their agent. Any belief on the plaintiffs' part that Dr. U was an agent of St. John Riverview Hospital and Medical Center would have been unreasonable. The Riverview defendants made no representations that would lead the plaintiffs to reasonably believe that Dr. U was an agent of St. John Riverview Hospital and Medical Center. There is no evidence linking St. John Riverview Hospital and Medical Center or the Riverview Medical Offices with the plaintiffs' selection of Dr. U. The court should have granted summary disposition in favor of the Riverview defendants. The order denying their motion must be reversed and the matter must be remanded for entry of an order granting summary disposition in their favor.

5. Under the facts of this case, it would be too great an expansion of the ostensible agency principles to hold St. John Hospital and Medical Center liable merely for confirming during a telephone call from Mrs. VanStelle to the St. John defendants' referral service that Dr. U, who was not working directly out of the hospital, is a member of the hospital's staff. The fact that a doctor has staff privileges at a hospital, by itself, is insufficient to establish an agency relationship. It is illogical to conclude that, because Mrs. VanStelle called the referral service, the plaintiffs looked to and thus relied on the St. John defendants for treatment. Nothing in the record would lead a reasonable person to believe that Dr. U was acting as an agent of the St. John defendants when rendering services to Mr. VanStelle. The plaintiffs actually looked to and relied on Dr. U for medical treatment, not the St. John defendants. The order denying the motion for summary disposition in favor of the St. John defendants must be reversed and the matter must be remanded for entry of an order granting summary disposition in their favor.

Reversed and remanded.

1. AGENCY — OSTENSIBLE AGENCY.

Three elements are necessary to establish the creation of an ostensible agency: the person dealing with the agent must do so with belief in the agent's authority and the person's belief must be a reasonable one, the belief must be generated by some act or neglect

on the part of the principal sought to be charged, and the person relying on the agent's authority must not be guilty of negligence.

2. HOSPITALS — DOCTORS — AGENCY.

An agency between a hospital and a doctor does not arise merely because a person goes to a hospital for medical care; there must be some action or representation by the hospital to lead the person to believe an agency in fact existed; the sole fact that a doctor used a hospital's facilities or separate facilities affiliated with and owned by a hospital to treat a patient is not sufficient to give the patient a reasonable belief that the doctor was an agent of the hospital.

3. HOSPITALS — DOCTORS — AGENCY.

The mere fact that a doctor has staff privileges at a hospital is not sufficient to establish an agency relationship between the doctor and the hospital; an agency relationship is not established by a hospital's mere act of acknowledging that a doctor has staff privileges at the hospital.

*Janet M. Brandon* for the plaintiffs.

*Kitch Drutchas Wagner DeNardis & Valitutti* (by *Susan Nealy Zitterman*) for St. John Health System—Detroit-Macomb Campus and Riverview Medical Offices affiliated with Detroit Riverview Hospital.

*Siemion, Huckabay, Bodary, Padilla, Morganti & Bowerman, P.C.* (by *Raymond W. Morganti*), for St. John Hospital and Medical Center and St. John Health System.

Before: FITZGERALD, P.J., and BANDSTRA and GAGE, JJ.

GAGE, J. Both cases in these consolidated appeals raise the legal issue of ostensible agency in a medical office setting. In Docket No. 229123, defendants St. John Health System—Detroit-Macomb Campus, doing business as St. John Riverview Hospital and Medical Center (St. John Riverview Hospital), Riverview Medical Offices (Riverview Medical), and Detroit Riverview Hospital (Riverview Hospital) (hereinafter col-

lectively referred to as the Riverview defendants) appeal by leave granted the circuit court's order denying their motion for summary disposition. In Docket No. 236435, defendants St. John Health Systems (St. John HS) and St. John Hospital and Medical Center (St. John Hospital) (hereinafter collectively referred to as the St. John defendants) appeal by leave granted the circuit court's order denying their motion for summary disposition. We reverse and remand for entry of an order granting summary disposition in favor of the Riverview and St. John defendants.

The basic factual background underlying plaintiffs' malpractice claims is largely undisputed. On January 23, 1998, plaintiff Virginia VanStelle took plaintiff Robert P. VanStelle to the emergency room at defendant Bon Secours Hospital, where he was treated by defendant Dr. Douglas Macaskill, D.O., for weakness in his arm and leg. On the hospital discharge papers, plaintiffs were referred to defendant Dr. Tha "Thomas" U, a neurologist, for further evaluation. The referral listed Dr. U's practice on Eight Mile Road in St. Clair Shores. Dr. U is an employee of defendant Michigan Neurology Associates, P.C. (MNA), and has staff privileges at several area hospitals, including defendant St. John Hospital and St. John Riverview Hospital.

Plaintiff Virginia VanStelle testified during her deposition that before she telephoned Dr. U's office to schedule an appointment, she called the referral center at St. John Hospital to verify that Dr. U was a "St. John doctor."[1] Mrs. VanStelle testified that she

---

[1] Initially, answers to interrogatories indicated that the referral service was owned by St. John Hospital; however, St. John Hospital later

wanted to ensure that Dr. U was a "St. John doctor" because, in her opinion, the doctors at Bon Secours Hospital and St. John Hospital were the "top doctors." According to Mrs. VanStelle, when she telephoned the referral center, she was told that Dr. U was "absolutely" "at St. John." She was also given another address for Dr. U at the Riverview offices. Mrs. VanStelle then telephoned Dr. U's office to schedule an appointment; however, the earliest appointment she could schedule with Dr. U was at his office in the Riverview Medical Offices located on East Jefferson in Detroit.[2]

Plaintiffs went to see Dr. U at his office in the Riverview Medical Offices on January 30, 1998. After examining Mr. VanStelle, Dr. U diagnosed that Mr. VanStelle "most likely" had a small vessel lacunas stroke and a hypertension problem. Dr. U indicated in his report that he asked Mr. VanStelle to return in two or three weeks and that he would obtain an echocardiogram to evaluate the left ventricular function. Attached to the prescription given to plaintiffs was Dr. U's card, which listed "St. John Health System" and "Riverview Medical Offices" at the top.

Before additional testing could be performed, Mr. VanStelle suffered a stroke "resulting in left-side hemiparesis and loss of vision in his left eye." In May 1999, plaintiffs filed a complaint against the various defendants alleging two distinct acts of medical malpractice: one that occurred at Bon Secours Hospital and one that occurred at the office where Dr. U per-

---

amended its answers to indicate the referral service was owned by St. John HS.

   [2] Mrs. VanStelle also testified that the receptionist at Dr. U's office told her that Dr. U worked out of St. John Hospital.

formed his examination. The complaint alleged in part that Dr. U "is an agent, whether real or ostensible, servant and/or employee of Defendants, Michigan Neurology Associates, P.C.; St. John's Hospital and Medical Center, a Michigan corporation; St. John Health Systems; and St. John Health Systems Detroit Medical Campus, d/b/a St. John Riverview Hospital and Riverview Medical Offices, affiliated with Detroit Riverview Hospital."

The Riverview defendants moved for summary disposition, arguing that they could not be held liable for the alleged negligence of Dr. U because Dr. U was an employee of only defendant MNA, and because plaintiffs clearly looked to Dr. U because of his affiliation with St. John Hospital, not the Riverview defendants, for care and treatment. They argued that the only connection they had with Dr. U was the fact that they leased part of the Riverview Medical Offices to MNA, who employed Dr. U, who in turn had an office in the Riverview Medical Offices. In response, plaintiffs argued there was evidence showing there was an ostensible, if not a real, agency between Dr. U and the Riverview defendants. Plaintiffs argued that they relied on the Riverview defendants for care and that their belief that Dr. U was a "St. John doctor" was reasonable. In reply, the Riverview defendants argued that they and the St. John defendants were all separate corporate entities and that there was no actual or real agency relationship between Dr. U and either Riverview Hospital or St. John Riverview Hospital. The trial court denied the motion, finding that under the circumstances, it seemed plaintiffs could reasonably have believed they were going to "see a St. John doctor at a St. John Hospital."

The St. John defendants thereafter filed a motion for summary disposition, arguing that none of the care and treatment at issue took place at St. John Hospital and that plaintiffs sought treatment from Dr. U on the recommendation of the emergency physician at Bon Secours Hospital. They argued that the evidence showed that plaintiffs looked to Dr. U individually for treatment, rather than to a hospital or health care entity. The St. John defendants further argued that neither the telephone call Mrs. VanStelle made to the hospital referral center nor the St. John logo on Dr. U's business card was sufficient to form a reasonable belief that the St. John defendants were providing medical care through Dr. U. In response, plaintiffs argued that there was a question of fact regarding whether an ostensible agency existed between Dr. U and the St. John defendants because the St. John defendants had made multiple representations that Dr. U was a St. John doctor. The trial court denied the motion, stating that "there is a question of fact that should properly be presented to the jury."

We granted leave in these cases to address several issues that have, as of yet, not been precisely addressed by this Court regarding the area of medical malpractice—(1) whether a hospital can be held vicariously liable for medical treatment not rendered at the hospital, but instead at a medical professional building "affiliated" with and owned by the hospital (and merely leased to the alleged negligent doctor's employer); and (2) whether a hospital can be held vicariously liable for medical treatment rendered by a physician to whom the patient was referred, and who was represented to be the hospital's doctor, for treatment that was not rendered at the hospital.

## I. STANDARD OF REVIEW

A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the nonmoving party. *Maiden, supra* at 120. The moving party is entitled to judgment as a matter of law when the proffered evidence fails to establish a genuine issue concerning any material fact. *Id.* We review de novo the trial court's decision regarding the motion for summary disposition. *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001).

## II. LAW OF OSTENSIBLE AGENCY

In *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978), our Supreme Court explained that, in general, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and simply uses the hospital's facilities to provide treatment to his patients. However, if the patient looked to the hospital to provide medical treatment and the hospital made a representation that medical treatment would be afforded by physicians working at the hospital, an agency by estoppel may be found. *Id.* at 250-251.

The plaintiff in *Grewe* visited a clinic for treatment after suffering a dislocated shoulder at work, and then went to the defendant hospital. *Id.* at 246. The plaintiff was admitted and initially examined by an internist, Dr. Gerald Hoffman, who sought a consulta-

tion from an orthopedic surgeon, Dr. Robert O. Fagen. *Id.* Dr. Fagen diagnosed the plaintiff as suffering a dislocated shoulder. Dr. Hoffman's associate, Dr. A. Lewis Katzowitz, who had staff privileges at the hospital, saw the plaintiff suffering and attempted to reduce the dislocated shoulder. The plaintiff alleged that Dr. Katzowitz injured him when he attempted to reduce the dislocation. *Id.* at 245-246.

The Supreme Court in *Grewe* identified the critical question to be whether the plaintiff, at the time of his admission to the hospital, looked to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. *Id.* at 251. The Court noted that a "relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with Dr. Katzowitz or whether the plaintiff and Dr. Katzowitz had a patient-physician relationship independent of the hospital setting." *Id.* The *Grewe* Court, quoting *Howard v Park*, 37 Mich App 496, 500-501; 195 NW2d 39 (1972), which quoted with approval *Stanhope v Los Angeles College of Chiropractic*, 54 Cal App 2d 141, 146; 128 P2d 705 (1942), referred to the decision in *Stanhope* as enlightening:

An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. In this connection it is urged by appellant that before a recovery can be had against a principal for the alleged acts of an ostensible agent, three things must be proved[:] [First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be

charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Grewe, supra* at 252-253 (citations and quotation marks omitted).]

Following *Stanhope*, the *Grewe* Court reasoned: "[W]e see nothing in the record which should have put the plaintiff on notice that Dr. Katzowitz, when he attempted to reduce the plaintiff's shoulder separation, was an independent contractor as opposed to an employee of the hospital." *Id.* at 253.

More recently, in *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991), this Court interpreted the comments of the *Grewe* Court:

> The essence of *Grewe* is that a hospital may be vicariously liable for the malpractice of actual or apparent agents. Nothing in *Grewe* indicates that a hospital is liable for the malpractice of independent contractors merely because the patient "looked to" the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital. Such a holding would not only be illogical, but also would not comport with fundamental agency principles noted in *Grewe* and subsequent cases. Those principles have been distilled into the following three elements that are necessary to establish the creation of an ostensible agency: (1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence.

To put it another way, the defendant as the putative principal must have done something that would create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital. *Chapa, supra* at 34. In *Chapa*, the plaintiff was

admitted to the defendant hospital after falling and later called his treating physician who became the attending physician and allegedly committed malpractice. This Court held that the defendant hospital was not liable merely because it initially treated the plaintiff and that it was not reasonable for the plaintiff to continue to believe that he was being treated by an agent of the hospital. *Id.* at 36.

Depending on the circumstances, in some cases, the most critical question is whether the patient "looked to" the hospital for treatment. *Grewe, supra.* Agency "does not arise merely because one goes to a hospital for medical care. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *Sasseen v Community Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1986). Further, the fact that a doctor used a hospital's facilities to treat a patient is not sufficient to give the patient a reasonable belief that the doctor was an agent of the hospital. *Heins v Synkonis*, 58 Mich App 119, 124; 227 NW2d 247 (1975).

### III. THE RIVERVIEW DEFENDANTS

Initially, we address the rather complex corporate structure of the respective defendants. In denying the Riverview defendants' motion for summary disposition, the trial court apparently treated the Riverview defendants and the St. John defendants as one entity, concluding that plaintiffs believed that Dr. U was a St. John doctor and that Mr. VanStelle would be treated at St. John Hospital.

The evidence shows that, when St. John Health System—Detroit-Macomb Campus merged with Detroit-Macomb Hospital Corporation in 1997, St. John Riverview Hospital became part of St. John Health System—Detroit-Macomb Campus. The Riverview Medical Offices were owned by Detroit-Macomb Hospital Corporation, doing business as Riverview Hospital, which, after the merger, became St. John Health System—Detroit-Macomb Campus, doing business as St. John Riverview Hospital. St. John Health System—Detroit-Macomb Campus has done business under the assumed names "Detroit Riverview Hospital," "St. John Riverview Hospital," and "Detroit-Macomb Hospitals Association." None of the evidence shows that any of the Riverview defendants are the same corporate entity as St. John HS or St. John Hospital. In fact, plaintiffs concede in their brief on appeal that "St. John Health System is the parent corporation[,] which has a subsidiary corporation known as the St. John Health System [—] Detroit-Macomb Campus[,] which is the complete and full owner of a medical clinic known as the St. John Health System [—] Detroit-Macomb Campus, Detroit Riverview Medical Offices."

"It is a well-recognized principle that separate corporate entities will be respected." *Seasword v Hilti, Inc (After Remand)*, 449 Mich 542, 547; 537 NW2d 221 (1995). "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Id.* Because plaintiffs have not alleged any abuse of corporate form that would warrant piercing the corporate veil, the Riverview defendants may not be held vicariously liable for Dr. U's negligence solely on the basis of

their status as a subsidiary corporation of St. John HS.

Plaintiffs seek to impose liability on the Riverview defendants on the basis of the fact that the medical treatment took place in offices owned by the Riverview defendants and leased to Dr. U's employer. Plaintiffs argue that the Riverview defendants made clear and direct written and oral representations to plaintiffs and the public concerning Dr. U's relationship with them and that plaintiffs relied on these representations. Therefore, plaintiffs argue that the Riverview defendants can be held vicariously liable for malpractice committed by Dr. U in accordance with the doctrine of ostensible agency.

We note initially that the Riverview defendants leased to defendant MNA the office space in which the alleged malpractice occurred. The sole fact that a defendant hospital's facilities were used by an alleged negligent physician is insufficient to create the appearance of an agency relationship between the defendant hospital and the physician. *Heins, supra* at 124. Here, the alleged malpractice took place in off-site office facilities, not the hospital. Therefore, the sole fact that the Riverview defendants' office facilities were used by Dr. U is not a sufficient act by the Riverview defendants to create the appearance that Dr. U was their agent.

The evidence shows that it was Mrs. VanStelle's understanding that Dr. U was a "St. John Hospital doctor," meaning that he could work out of the hospital and perform surgery there. There is no evidence that plaintiffs believed Dr. U was a staff doctor for St. John Riverview Hospital. When making the appointment with Dr. U, plaintiffs did not rely on any belief

that Dr. U was a St. John Riverview staff doctor. In fact, plaintiffs made the appointment at Dr. U's office at the Riverview Medical Offices only because it was the earliest appointment they could make. When plaintiffs were originally referred to Dr. U by the emergency room physician at Bon Secours Hospital, the referral listed Dr. U's office on Eight Mile Road in St. Clair Shores.

Moreover, any belief on plaintiffs' part that Dr. U was an agent of St. John Riverview Hospital would have been unreasonable. When Mrs. VanStelle called the referral service, she was told that Dr. U was a St. John doctor, but was not told that he was a staff doctor for St. John Riverview Hospital. The receptionist at Dr. U's office told plaintiffs that Dr. U worked out of St. John Hospital. The only reason plaintiffs had to believe that Dr. U was an agent for St. John Riverview Hospital was the fact that he had an office in the Riverview Medical Offices. The fact that the building in which the doctor performed medical services was owned by the hospital does not justify a belief that the doctor is somehow acting on behalf of the hospital. There is no evidence to show that plaintiffs relied on the fact that Dr. U would be working out of the Riverview Medical Offices when he examined Mr. VanStelle.

Further, the Riverview defendants made no representations that would lead plaintiffs to reasonably believe that Dr. U was an agent of St. John Riverview Hospital. See *Chapa, supra.* Bon Secours Hospital referred plaintiffs to Dr. U. The referral service informed plaintiffs that Dr. U was a St. John doctor. There is no evidence linking St. John Riverview Hospital or the Riverview Medical Offices with plaintiffs'

selection of Dr. U. The evidence shows that plaintiffs went to Dr. U after making sure he was a "St. John doctor."

Plaintiffs rely on Dr. U's business card containing references to MNA, St. John HS, and "Riverview Medical Offices [a]filliated with Detroit Riverview Hospital" as evidence sufficient to raise a question of fact relative to ostensible agency.[3] Plaintiffs, however, did not receive Dr. U's business card until after Dr. U examined Mr. VanStelle. Further, directly above Dr. U's address and directly below his name, the business card states, "Michigan Neurology Associates, P.C." This reasonably shows that Dr. U actually worked for MNA.

Plaintiffs argue that they also relied on signs outside Dr. U's office that allegedly referred to Riverview and St. John. However, plaintiffs have not presented any evidence of these signs or their content. The evidence presented by the Riverview defendants shows that they did not erect a sign at the Riverview Medical Offices referencing St. John until January 1999, twelve months after plaintiffs' visit to Dr. U. Moreover, plaintiffs have presented no evidence that they relied on any signs in believing that Dr. U was an agent of St. John Riverview Hospital. Likewise, evidence of advertisements on a website or in the Yellow Pages does not support plaintiffs' claim because there is no evidence that plaintiffs saw these advertisements and relied on them before the visit with Dr. U.

---

[3] These business cards were printed, paid for, supplied, and distributed by St. John Health System—Macomb Campus, doing business as St. John Riverview Hospital.

Because of the circumstances of this case, the critical question here is whether Mr. VanStelle looked to the hospital for treatment or whether he merely viewed the hospital as the situs where the doctor would treat him. *Grewe, supra.* In summation, Bon Secours Hospital referred plaintiffs to Dr. U. Plaintiffs had no previous relationship with Dr. U before the alleged malpractice. Plaintiffs did not look to Riverview or its affiliates for a treating physician. The office in which Dr. U's alleged malpractice occurred was not the Riverview defendants' clinic; rather, the Riverview defendants merely leased the office space to Dr. U's employer, MNA. The Riverview Medical Offices were merely a situs where Dr. U examined Mr. VanStelle. Because St. John Riverview Hospital and Riverview Medical Offices did not make any representations that would reasonably create in plaintiffs' minds a belief that Dr. U was acting on behalf of Riverview Hospital and because the premises was merely leased to MNA, summary disposition should have been granted to the Riverview defendants.

#### IV. THE ST. JOHN DEFENDANTS

Plaintiffs seek to hold the St. John defendants liable under the doctrine of ostensible agency for alleged malpractice committed by Dr. U. Plaintiffs allege that the St. John defendants made representations concerning the relationship between Dr. U and St. John Hospital and that plaintiffs relied on these representations in obtaining treatment from Dr. U.[4]

---

[4] As previously addressed, the office where the alleged malpractice occurred was owned by the Riverview defendants. Defendant St. John Health Systems is the parent corporation.

It appears that plaintiffs believed Dr. U was an agent of the St. John defendants. The evidence shows that Mrs. VanStelle believed that Dr. U was a "St. John doctor," meaning he could work out of St. John Hospital and perform surgery there. Mrs. VanStelle was told by both the St. John referral service and Dr. U's office that Dr. U worked out of St. John Hospital.[5] Moreover, Mrs. VanStelle testified that she made the appointment with Dr. U because she thought he was a "St. John doctor." This evidence shows plaintiffs relied on their belief that Dr. U was an agent of the St. John defendants in making the appointment to see Dr. U. However, this does not necessarily show that the St. John defendants reasonably caused plaintiffs to believe Dr. U was acting as their agent.

The evidence on which plaintiffs can rely is the evidence that Mrs. VanStelle called the St. John referral service before making the appointment with Dr. U.[6] However, the referral service merely informed plaintiffs that Dr. U worked out of St. John and gave her Dr. U's Riverview address. The only reason plaintiffs went to the Riverview office was because it was the earliest appointment they could make. Again, the fact that a doctor has staff privileges at a hospital, by itself, is insufficient to establish an agency relationship. We find that *Grewe, supra,* does not warrant holding a hospital liable for merely acknowledging that a doctor has staff privileges at that hospital. Under the facts of this case, it would be too great an

---

[5] As noted previously, according to the amended answers to interrogatories, the referral service was owned by St. John HS.

[6] For the reasons stated in the previous section, none of the other evidence submitted—Dr. U's business card, the signs located outside the office, or the advertisements—provided a valid basis for plaintiffs to reasonably believe Dr. U was an agent of the St. John defendants in this case.

expansion of the ostensible agency principles to hold a hospital liable for confirming that a doctor, who was not working directly out of the hospital, is a member of the hospital's "staff."

The more significant issue under the facts of this case is whether plaintiffs actually looked to the St. John defendants for treatment. As noted previously, Mr. VanStelle did not have a prior relationship with Dr. U before the alleged malpractice, and the St. John defendants also did not provide Dr. U to plaintiffs. Plaintiffs were referred to Dr. U by the emergency room physician at Bon Secours Hospital. Plaintiffs had already been referred to Dr. U at the time they inquired about Dr. U's qualifications. The referral service Mrs. VanStelle called did not necessarily refer plaintiffs to Dr. U, but merely informed Mrs. VanStelle that Dr. U was a "St. John doctor." Moreover, Mr. Van-Stelle was not treated at St. John Hospital; rather, he was treated at an office leased to Dr. U's employer. From the facts of this case, it is illogical to conclude that because Mrs. VanStelle called the referral service, plaintiffs looked to, and thus, relied on the St. John defendants for treatment.

We find that plaintiffs looked to Dr. U for treatment on the basis of his qualifications. Plaintiffs believed that being a "St. John doctor" was a testament to the quality of the doctor. However, there is no basis to hold the St. John defendants liable merely because plaintiffs relied on their perception of Dr. U's qualifications in seeking services from Dr. U. Although plaintiffs claim that they believed Dr. U was an agent of the St. John defendants and that they relied on this belief in obtaining services from Dr. U, there is nothing in the record before this Court that would lead a

reasonable person to believe Dr. U was acting as an agent of the St. John defendants when rendering services to Mr. VanStelle, particularly given the fact that treatment was not rendered at the hospital.

We find no basis to hold that in calling the referral service, plaintiffs looked to and could reasonably rely on the St. John defendants for medical treatment. Because plaintiffs actually looked to Dr. U, rather than the St. John defendants, for medical treatment, the trial court erred in denying the St. John defendants' motion for summary disposition.

Reversed and remanded to the trial court for entry of an order granting summary disposition to the Riverview and St. John defendants. We do not retain jurisdiction.