# STATE OF MICHIGAN

# COURT OF APPEALS

DRAGO MIHAJLOVSKI, JADRANKA
MIHAJLOVSKI, and ZIVE MIHAJLOVSKI,

Plaintiffs-Appellants,

v

BIRACH BROADCASTING CORPORATION
and SIMA BIRACH,

Defendants-Appellees,

and

BIRACH HOLDINGS CORPORATION, SIMA
BIRACH, JR., and SIMA BIRACH, JR., TRUST

Defendants.

UNPUBLISHED
June 20, 2017

No. 331284
Oakland Circuit Court
LC No. 2014-140471-CK

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

In this fraud and contract action, plaintiffs appeal by right the circuit court's January 14, 2016 order clarifying that its prior orders granting plaintiffs default judgment did not apply to defendants Sima Birach (Birach, Sr.) and Birach Broadcasting Corporation (BBC), because of the court's June 3, 2015, order granting those defendants summary disposition. The modified default judgment in favor of plaintiffs applies only against defendants Sima Birach, Jr. (Birach, Jr.) and the Sima Birach, Jr. Trust (the Trust). On appeal, plaintiffs argue Birach, Sr. and BBC can be held vicariously liable for the actions of Birach, Jr. based on the theory of ostensible agency. We conclude that questions of fact still exist regarding whether Birach, Jr. was the ostensible agent of Birach, Sr. and BBC, whether Birach, Sr. and BBC can be estopped from denying Birach, Jr. was an ostensible agent, and whether Birach, Sr. and BBC can be held vicariously liable for Birach, Jr.'s misrepresentations. Accordingly, we reverse and remand.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

-1-

Drago Mihajlovski (Drago) met Birach, Jr. through Drago's son, Zive Mihajlovski (Zive), who had known Birach, Jr. since the 1990s. Zive also knew Birach, Sr., as he worked for WCAR 1090 AM, a radio station owned solely by BBC, Birach, Sr.'s broadcasting company. At all times relevant to this appeal, Birach, Sr. and BBC leased to Birach, Jr. and Birach Holdings Corporation (BHC) all of WCAR 1090 AM's airtime.

Through the course of Drago and Birach, Jr.'s relationship, Drago and his wife, Jadranka Mihajlovski (Jadranka), invested $950,000 in Birach, Jr.'s company, BHC, in exchange for a 25% interest in BHC, the company that plaintiffs believed owned WCAR 1090 AM. Drago maintained that he believed he had invested in WCAR 1090 AM, not BHC, because it was affiliated with ESPN Detroit, a network with which he was familiar. The agreement was memorialized in a Memorandum of Understanding between Drago and Birach, Jr., and was signed by Birach, Jr. in his capacity as "Trustee of the Sima Birach, Jr. Trust" (the Trust). Attached to the Memorandum of Understanding was a payment schedule, detailing the particulars of Drago and Jadranka's investment. The attachment also stated that as part of the investment, Jadranka and Zive would be given lifetime employment contracts.

These employment contracts were drafted on ESPN Detroit (WCAR 1090 AM) letterhead, and were addressed to Jadranka and Zive, respectively, from Birach, Jr. in his capacity as President and CEO of BHC. The employment contracts indicated that they served as "official employment agreement[s] at ESPN Radio Detroit, operated as a division of [BHC]." Jadranka and Zive were to report directly to Birach, Jr. in his capacity as Chairman and CEO. Jadranka and Zive were paid monthly salaries under the contracts for approximately three months, when the payments stopped. Jadranka and Zive contacted Birach, Jr. about the outstanding payments but Birach, Jr. did not make the payments owed.

On April 28, 2014, plaintiffs filed a 10-count complaint against Birach, Sr., BBC, Birach Jr., the Trust, and BHC. Against Birach, Jr., plaintiffs alleged fraud, two counts of breach of contract, misrepresentation, fraud in the inducement, and conversion, and requested an accounting of BHC and the Trust. Additionally, plaintiffs alleged Birach, Sr. and BBC should be estopped from "denying the existence" of an agency relationship between Birach Sr. and Birach Jr., and that Birach, Sr. and BBC should be held vicariously liable for the acts and business transactions of Birach, Jr. and BHC.

Birach, Sr. and BBC moved for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted defendants' motion, finding that no agency relationship existed such that Birach, Sr. and BBC could be held vicariously liable for the misrepresentations of Birach, Jr. The trial court subsequently denied plaintiffs' motion for reconsideration.

## II. STANDARD OF REVIEW

On appeal, plaintiffs argue the trial court erred in granting summary disposition in favor of Birach, Sr. and BBC because there was a question of fact regarding whether Birach, Jr. was the ostensible agent of Birach, Sr. and BBC at the time he entered into agreements with plaintiffs. We agree.

A trial court's grant or denial of summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion for summary disposition under MCR 2.116(C)(10) should be granted when, after consideration of all the pleadings, admissions, and other evidence the parties have submitted, in the light most favorable to the nonmoving party, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Construction, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). If the moving party does so, the nonmoving party then must demonstrate that a genuine issue of material fact exists. *Id*. The nonmoving party may use affidavits, depositions, and other documentary evidence to meet their burden but the content or substance of such material must be admissible as evidence. See *Maiden v Rozwood*, 461 Mich 109, 121, 123 n 5; 597 NW2d 817 (1999). Conclusory allegations, devoid of any detail, are insufficient to create a genuine issue of material fact. *Kozak v City of Lincoln Park*, 499 Mich 465, 468; 885 NW2d 443 (2016). If the nonmoving party fails to establish the existence of a material factual dispute, the moving party's motion is properly granted. *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001).

## III. ANALYSIS

"An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him . . . ." *Grewe v Mt Clemens General Hospital*, 404 Mich 240, 252; 273 NW2d 429 (1978) (quotation marks and citation omitted); see also *VanStelle v Macaskill*, 255 Mich App 1, 9; 662 NW2d 41 (2003). To prove someone is the ostensible agent of a principle, the plaintiff must prove:

> [First] the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principle sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Grewe*, 404 Mich at 253 (quotation marks and citations omitted); see also *VanStelle*, 255 Mich App at 9-10.]

Essentially, the principal must have done something that would create in the third party's mind the reasonable belief that the agent was acting on behalf of the principal. *VanStelle*, 255 Mich App at 10. Further, 1 Restatement Agency, 3d, § 2.05 (Estoppel to Deny Existence of Agency Relationship), pp 145-146, provides:

> A person who has not made a manifestation that an actor has authority as an agent and who is not otherwise liable as a party to a transaction purportedly done by the actor on that person's account is subject to liability to a third party

who justifiably is induced to make a detrimental change in position because the transaction is believed to be on the person's account if

(1) the person intentionally or carelessly caused such belief, or

(2) having notice of such belief and that it might induce others to change their position, the person did not take reasonable steps to notify them of the facts.

In this case, a question of fact remains whether the evidence establishes that Birach, Jr. was the ostensible agent of BBC and Birach, Sr., sufficient to impose vicarious liability. Although Birach, Sr. did not implicitly hold out Birach, Jr. as his agent, or the agent of BBC, Birach, Sr. had notice of Birach, Jr.'s propensity to represent himself as an owner of WCAR 1090 AM. In 2009, Birach, Sr. took legal action in the United States District Court for the Eastern District of Virginia for the sole purpose of protecting himself and BBC from Birach, Jr. by obtaining a permanent consensual injunction. The language of the order suggests that Birach, Sr. sought protection from Birach, Jr. because Birach, Jr. had previously misrepresented himself as an agent of Birach, Sr., or of BBC, causing confusion in broadcast business community, to the financial detriment of Birach, Sr. The order enjoined Birach, Jr. from using the BBC name or logo in connection with broadcasting, and enjoined Birach, Jr. from using the BBC name to enter into any legally binding financial arrangement. Birach, Jr. was also enjoined from representing himself as being associated with BBC, and was "enjoined from filing any application to register or registering, in his own name, the service mark or trade name Birach Broadcasting Corporation and from filing any application for a certificate of authority to do business under the same [sic] Birach Broadcasting Corporation with any state or local government in the United States."

Nevertheless, despite the injunction, Birach, Sr., by either want of ordinary care or sheer negligence, continued to allow Birach, Jr. to represent to the general public that he had authority with respect to WCAR 1090 AM. In 2011, a mere two years after obtaining the permanent injunction, Birach, Sr. gave up the protection that injunction afforded by allowing Birach, Jr. to lease WCAR 1090 AM. Additionally, in direct violation of the injunction, Birach, Sr. allowed Birach, Jr., as Chairman and CEO of BHC, to file a certificate of assumed name with the Michigan Department of Licensing and Regulatory Affairs. This filing stated that BHC had assumed the name, and would be transacting business as, WCAR Radio, even though WCAR 1090 AM was and is owned by BBC.

Birach, Sr. also provided little to no oversight as lessor of WCAR 1090 AM. He allowed Birach, Jr. to be the sole authority regarding programming and marketing for WCAR 1090 AM, and confirmed that Birach, Jr. was "entitled to contract for use of air-time without seeking or obtaining permission from anyone." Birach, Sr. further admitted that Birach, Jr. "represented to the media and general public that he had the authority to operate the on-air operations of WCAR [1090 AM], including providing programming and selling time for advertisement broadcasts." During his deposition, Birach, Sr. conceded that Birach, Jr. had not paid any monies under the lease, despite being contractually obligated to remit $20,000 per month, $10,000 to BBC and $10,000 "in escrow account for Alexander and Nicholas," Birach, Jr.'s sons. Lastly, and perhaps most telling, is that the lease agreement *specifically* indicates that Birach, Jr. is to be solely "in charge of any legal problems he/she creates."

-4-

On top of the foregoing, Birach, Jr. consistently operated WCAR 1090 AM as though he was the owner of the station, although he was not. He hired and payed employees through BHC, and told multiple people, including employees, that not only did he own WCAR 1090 AM, but he also owned radio stations in Pontiac, Michigan and Pittsburgh, Pennsylvania. In light of this evidence, there is a question of fact regarding whether Birach, Sr. carelessly, or negligently, allowed Birach, Jr. to represent to the general public that he was the owner and operator of WCAR 1090 AM, such that a third party could reasonably believe that Birach, Jr was the ostensible agent of Birach, Sr. and BBC.

Michigan jurisprudence imposes upon third parties seeking to hold a purported principle liable for the dealings of its ostensible agent the requirement that they themselves were not negligent in their own dealings with the ostensible agent in order to recover from a principal under a theory of vicarious liability. *Grewe*, 404 Mich at 253; *VanStelle*, 255 Mich App at 10. Defendants maintain that if Drago had done his homework with respect to the ownership of WCAR 1090 AM, he would have known that Birach, Jr. did not own WCAR 1090 AM. However, there is evidence that Drago did, in fact, take steps to investigate Birach, Jr.'s involvement with WCAR 1090 AM. In his deposition, Drago testified that prior to making his investment, he went to his attorney to do the investigation. Drago stated, "[t]he attorney know better than that [sic] to check the record, whatever they supposed to do. That's why you hire the attorney." Drago's attorney informed him that everything was "fine" with regards to the investment. It is not negligent, or even unreasonable, to trust retained counsel to thoroughly vet a corporation that his client his seeking to invest in. Thus, whether Drago blindly entered into a transaction with Birach, Jr., and failed to "perform the most elementary due diligence," is a question of fact.

Defendants further argue their point by noting that Zive had worked for BBC at WCAR 1090 AM, and he knew that the broadcasting license was in the name of BBC, not BHC. Zive testified that he had seen the license for WCAR 1090 AM, and that he knew the station was owned by Birach, Sr. However, Zive also testified that he did not discuss Drago's investment before Drago paid Birach, Jr. Further, Zive recalled that Birach, Jr. had previously represented to him that he either owned WCAR 1090 AM, a station in Pontiac, and a station in Pittsburgh, or that he was going to own them. Regardless, Zive did not make a financial investment, Drago did. Zive's only claim in this lawsuit is for breach of his employment contract. Accordingly, what Zive knew or did not know with respect to the ownership of WCAR 1090 AM at the time of Drago's investment, or what Zive's relationship with Birach, Jr. or Birach Sr. was, is irrelevant.

Defendants next argue that Birach, Jr. made it clear in his dealings with Drago that Drago would be investing in BHC, not BBC or WCAR 1090 AM, and accordingly, neither Birach, Sr. nor BBC can be held vicariously liable for breach of contract, fraud, and misrepresentation on Birach, Jr.'s behalf. This argument, too, fails. The Memorandum of Understanding itself is an agreement between Drago and Birach, Jr., as trustee for the Trust, and BHC. Attached to the Memorandum of Understanding is the investment schedule, which also mentions that Drago's investment is in exchange for lifetime employment agreements for Jadranka and Zive. Thus, the employment contracts are incorporated by reference into the Memorandum of Understanding.

-5-

The employment contracts are key to the analysis because they show exactly how Birach, Jr. was holding himself out as having some authority over WCAR 1090 AM. Specifically, they show that Jadranka's and Zive's employment contracts were drafted on ESPN Detroit, WCAR 1090 AM letterhead, but were addressed to Jadranka and Zive, respectively, from Sima Birach, Jr., in his capacity as President and CEO of BHC. The employment contracts indicate that they serve as "official employment agreement[s] at ESPN Radio Detroit, operated as a division of [BHC]." Both Jadranka and Zive in their respective positions were to report directly to Birach, Jr., "in his capacity as Chairman and CEO." Based on the foregoing, it is not crystal clear, as defendants claim, that Birach, Jr. was acting solely on his own behalf, or on the behalf of BHC. To the contrary, it appears that Birach, Jr. entered into the underlying agreement with plaintiffs under the guise that he was Chairman and CEO of BHC, and ESPN Detroit, WCAR 1090 AM, was a division of BHC, when in reality, it was owned by BBC. Through defendants' negligence, Birach, Jr. was able to hold himself out, at the very least, as an ostensible agent of WCAR 1090 AM, which was owned by BBC. Therefore, a question of fact remains regarding whether Birach, Sr. and defendants should be estopped from denying that Birach, Jr. acted as an ostensible agent for Birach, Sr. and BBC, and whether Birach, Sr. and BBC should be held vicariously liable for Birach, Jr.'s misrepresentations.

We briefly acknowledge that defendants present alternative grounds for affirmance on appeal. Defendants are permitted to advance alternative grounds for affirmance on appeal, "even if the alternative ground was considered and rejected by the lower court or tribunal." *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000), citing *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994).

First, defendants argue that there is no support in Michigan law to support the theory that because Birach, Jr. operated WCAR 1090 AM as if he owned it, "that somehow makes Birach, Sr. and [BBC] liable for Birach, Jr.'s misrepresentations." Because Birach, Jr. acted solely for his own benefit, and not for the benefit of Birach, Sr. or BBC, his actions therefore were outside the scope of any agency he may have had. This argument is unpersuasive. Defendants' argument mistakenly relies on a theory of respondeat superior in the context of an employer-employee relationship. As defendants correctly point out, under the doctrine of respondeat superior, when an employee acts solely to further its own individual interests, it cannot be characterized as falling within the scope of the agent's employment such that the employer is vicariously liable for the employee's actions. *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). However, plaintiffs do not seek to hold Birach, Sr. vicariously liable for Birach, Jr.'s actions as an employee under the doctrine of respondeat superior, but rather, under the theory of ostensible agency. Ostensible agency, unlike respondeat superior, does not require that the agent be an employee, or that the principal received any benefit from the agent's actions. *Grewe*, 404 Mich at 253; *VanStelle*, 255 Mich App at 10. Only that the principal, even negligently, allowed a third party to believe that an agency relationship existed between the principal and the purported agent. *Grewe*, 404 Mich at 253; *VanStelle*, 255 Mich App at 10. Accordingly, defendants' argument is misplaced.

Next, in claiming "Drago had some responsibility to attempt to confirm Birach, Jr.'s representations of ownership," defendants rely on *Dhillon v BBC Holdings, Inc*, 2009 US App LEXIS 28865; 2009 WL 959875 (WD Wash, 2009), aff'd 371 Fed Appx 814 (2010), an order of the United States District court for the Western District of Washington, laying out the court's

findings of facts and conclusions of law after a four day trial. This Court is not bound to follow the result in *Dhillon* because it is a lower court order from another jurisdiction, and therefore, is nonbinding authority, *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006), but also because it is merely a trial court order. Further still, as previously discussed, there is a question of fact regarding whether Drago attempted to confirm Birach, Jr.'s representations of ownership by relying on his attorney.

We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro