*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA WENDT,

      Plaintiff-Appellant,

v

DR. JILL BOWERMAN and MIDMICHIGAN
MEDICAL CENTER - MIDLAND,

      Defendants-Appellees.

UNPUBLISHED
June 11, 2019

No. 343612
Midland Circuit Court
LC No. 16-003411-NH

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals by right the trial court's orders granting each defendant, Dr. Jill Bowerman and MidMichigan Medical Center – Midland (MMCM), summary disposition under MCR 2.116(C)(10). Plaintiff challenges the trial court's decision to exclude, as unreliable, her expert witness's opinions. Plaintiff further contends that there was a genuine issue of fact regarding whether there was an ostensible agency relationship such that MMCM could be held vicariously liable for Dr. Bowerman's actions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff underwent a "total knee arthroplasty" ("TKA") operation, i.e., knee replacement, on her left knee at MMCM. As part of this procedure, the anesthesiologist, Dr. Bowerman, administered a sciatic nerve block and a femoral nerve block. Dr. Bowerman also administered Versed, an antianxiety drug. Plaintiff, who was morbidly obese[1] and had Type 2 diabetes, allegedly suffered permanent nerve injury in her left leg as a result of the nerve blocks. She brought this action against Dr. Bowerman and MMCM, claiming that she was oversedated with Versed, which inhibited her ability to feel pain during the nerve block process, and contributed to

---

[1] "Morbidly obese" is a medical term used to describe individuals with a body mass index (BMI) greater than 40. Plaintiff's BMI was 50.

her nerve injury. Plaintiff further alleged that Dr. Bowerman was negligent in performing the sciatic nerve block notwithstanding plaintiff's diabetes and obesity.

During discovery, MMCM moved for summary disposition under MCR 2.116(C)(10), arguing that it was not vicariously liable for Dr. Bowerman's actions because Dr. Bowerman was not employed with MMCM, and plaintiff could not show an ostensible agency relationship between MMCM and Dr. Bowerman. The trial court granted MMCM's motion, concluding that there was no evidence to support a finding that plaintiff held a reasonable belief that Dr. Bowerman was an agent of MMCM. The trial court noted that plaintiff signed a consent form in which she acknowledged that some physicians participating in her surgery were independent contractors, and not hospital employees. The trial court determined that even if plaintiff's belief was reasonable, there was no action or inaction by MMCM to instill such a belief.

Dr. Paul Rein, a practicing anesthesiologist, testified for plaintiff concerning the applicable standard of care for an anesthesiologist, as well as how Dr. Bowerman breached this standard in administering the Versed and the sciatic nerve block.[2] Dr. Rein believed that a sciatic nerve block should not have been performed because of plaintiff's obesity and diabetes. Furthermore, he believed that plaintiff was oversedated with Versed. Dr. Bowerman moved for summary disposition, arguing that Dr. Rein's opinions were unsupported by scientific literature and the anesthesiology community, and accordingly, Dr. Rein's opinions should be excluded under MRE 702.

The trial court convened a *Daubert*[3] hearing, and heard testimony from Dr. Rein and Dr. Bowerman's expert witness, Dr. John Pappas, an anesthesiologist practicing in Michigan. Both parties submitted various scientific literature in support of their respective positions. The trial court determined that Dr. Rein's opinions were unreliable because they were unsupported by scientific literature; were not generally accepted within the scientific community; were not subjected to any testing, replication, or review; and were based on several erroneous factual assumptions regarding plaintiff's medical history.

Plaintiff appeals the trial court order granting MMCM summary disposition, and the trial court order granting Dr. Bowerman summary disposition.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). The trial court abuses its discretion when it "chooses an outcome falling outside the range of principled

---

[2] Dr. Rein took no issue with the femoral nerve block.

[3] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

outcomes." *Id*. This Court reviews de novo the trial court's interpretation of an evidentiary rule. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126; 732 NW2d 578 (2007).

A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.

## B. EXPERT WITNESS RELIABILITY

The trial court did not abuse its discretion in excluding Dr. Rein's testimony on the basis of unreliability. Accordingly, summary disposition in Dr. Bowerman's favor was properly granted.

In order to succeed in a medical malpractice action, a plaintiff must prove "(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (quotation marks and citation omitted). Furthermore, to establish the standard of care in a medical malpractice action and that the defendant breached that standard, a plaintiff generally must present expert testimony. *Id*. There is an exception "when the professional's breach of the standard of care is so obvious that it is within the common knowledge and experience of an ordinary layperson." *Id*. at 21-22. Expert testimony, to be admissible, must be reliable. MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Our Supreme Court has declared "that MRE 702 incorporates the standards of reliability that the United States Supreme Court described to interpret the equivalent federal rule of evidence in *Daubert . . . .*" *Edry*, 486 Mich at 639. Acting as a "gatekeeper," *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067, 1067; 729 NW2d 221 (2007), the trial court " 'must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable,' " *Edry*, 486 Mich at 640, quoting *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 589; 113 S Ct 2786; 125 L Ed 2d 469 (1993). MRE 702 requires that the trial court conduct

> a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus, it is insufficient for the proponent of [an] expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of

expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology. [*Clerc*, 477 Mich at 1067-1068 (quotation marks and citation omitted; alteration by the *Clerc* Court).]

However, these "factors may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony." *Elher*, 499 Mich at 24-25. Moreover, "even though the United States Supreme Court has stated that, in some cases, 'the relevant reliability concerns may focus upon personal knowledge or experience,' the Court has also stated that even in those cases, the *Daubert* factors can be helpful, even if all of the factors may not necessarily apply in determining the reliability of scientific testimony." *Id*. at 25 (citations omitted).

Although lack of scientific literature is "not dispositive," it is nonetheless "an important factor in determining the admissibility of expert witness testimony." *Edry*, 486 Mich at 640. Generally, a party may not "simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id*. at 642. Furthermore, an expert witness may not speculate. *Id*. at 642 n 6. However, the trial court's "inquiry is flexible and focused 'solely on principles and methodology' rather than ultimate conclusions, and its 'overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission.' " *Chapin*, 274 Mich App at 126-127, quoting *Daubert*, 509 US at 594-595. The trial court's role "is to filter out expert evidence that is unreliable, not to admit only evidence that is unassailable." *Chapin*, 274 Mich App at 139. The proper role is to determine "whether the opinion is rationally derived from a sound foundation," and not "whether an expert's opinion is necessarily correct or universally accepted." *Id*. The party that is proposing the admission of evidence bears the burden of establishing that evidence's relevance and admissibility. *Elher*, 499 Mich at 22.

In determining the reliability of an expert witness's opinions in a medical malpractice action, the trial court must consider the seven factors within MCL 600.2955(1). *Elher*, 499 Mich at 23. MCL 600.2955 states in pertinent part:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

\* \* \*

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in [MCL 600.2169[4]].

Although the trial court must consider these statutory factors, not every factor may be relevant to a particular case, *Elher*, 499 Mich at 27, and there is no requirement for all or a majority of the factors to favor admission of the expert's testimony, *Chapin*, 274 Mich App at 137.

In the present case, Dr. Rein was unable to cite scientific literature to show that a person with obesity and diabetes was not a good candidate for a sciatic nerve block. Dr. Rein even acknowledged that some diabetics were good candidates for nerve blocks, depending on their size, insulin use, oral agents, the risks, and whether the diabetes was well controlled. Furthermore, Dr. Pappas testified that there was no literature that indicated that patients with obesity and diabetic peripheral neuropathy should not be administered sciatic nerve blocks. Dr. Pappas explained that he and other anesthesiologists at his hospital routinely performed sciatic nerve blocks on patients who were obese and diabetic. Dr. Pappas testified that Dr. Rein's opinions were not supported by scientific literature, and were not generally accepted within the anesthesiology community. Additionally, the journal articles that plaintiff submitted in support of Dr. Rein's testimony did not support Dr. Rein's opinions and, instead, tended to support Dr. Bowerman's position. In contrast, Dr. Bowerman submitted ample scientific literature supporting not only the conclusion that nerve blocks were the most efficient method for post-

---

[4] MCL 600.2169 sets forth the requirements for a witness to be qualified as an expert witness. There is no dispute over Dr. Rein's qualifications as an expert. It is only his opinions that were challenged on the basis of unreliability.

TKA pain management, but also that nerve blocks could (and should) be used in obese and diabetic patients.

Regarding plaintiff's Versed oversedation claim, Dr. Rein testified that his opinion was based on the assumption that plaintiff received five milligrams of Versed in a single dose. Dr. Rein cited scientific literature that recommended a dose far below this for a person of plaintiff's age and health. However, Dr. Bowerman testified at her deposition that she gave plaintiff divided doses of Versed: 2.5 milligrams for the sciatic nerve block and 2.5 milligrams for the femoral nerve block. Furthermore, Dr. Bowerman testified that she further "titrated" these doses in half, meaning that plaintiff initially received only 1.25 milligrams. The rest of the Versed was administered over time. This dosage comported with advice in the literature that Dr. Rein himself cited. Dr. Rein, accordingly, based his opinion on an erroneous factual premise, undermining its reliability.

Similarly, Dr. Rein testified at his deposition that he based his sciatic nerve block opinions on the assumption that plaintiff had diabetic neuropathy, which is a condition that affects a person's nerves and ability to perceive pain. However, Dr. Rein could point to no evidence that plaintiff had neuropathy. In fact, he conceded at his deposition that his assumption was incorrect. Furthermore, Dr. Bowerman submitted plaintiff's medical records, which showed no presence of neuropathy before or after the TKA.

Therefore, the trial court did not abuse its discretion in finding that Dr. Rein's opinions were unreliable. His opinions were unsupported by scientific literature and the scientific community, and were based on erroneous assumptions and facts. The trial court properly referenced various factors in MCL 600.2955, including the use of scientific literature, MCL 600.2955(1)(b), whether Dr. Rein's opinions were generally accepted within the scientific community, MCL 600.2955(1)(e), and whether Dr. Rein's opinions had been subjected to testing, replication, or review, MCL 600.2955(1)(a). Dr. Rein's opinions were essentially based only on his own experience, knowledge, and background, but this on its own does not make such opinions reliable under MRE 702. See *Edry*, 486 Mich at 642.

C. OSTENSIBLE AGENCY

The trial court did not err by granting MMCM's motion for summary disposition because plaintiff failed to show that there was an ostensible agency relationship between MMCM and Bowerman.

"[A] hospital may be vicariously liable for the malpractice of actual or apparent agents." *VanStelle v Macaskill*, 255 Mich App 1, 10; 662 NW2d 41 (2003) (quotation marks and citation omitted). However, a hospital will not be held vicariously liable for the actions of medical personnel who are independent contractors unless an ostensible agency relationship is shown. *Id*. To demonstrate ostensible agency, a party must show three elements:

(1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged,

and (3) the person relying on the agent's authority must not be guilty of negligence. [*Id*. (quotation marks and citation omitted).]

Critically, a hospital will not be held vicariously "liable for the malpractice of independent contractors merely because the patient 'looked to' the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital." *Id*. (quotation marks and citation omitted). Furthermore, an ostensible agency relationship will not arise simply because the plaintiff went to the hospital for care or because a physician used the hospital to treat the plaintiff. *Id*. at 11. Rather, "the defendant as the putative principal must *have done something that would create in the patient's mind* the reasonable belief that the doctors were acting on behalf of the defendant hospital." *Id*. at 10 (emphasis added).

In the present case, plaintiff testified at her deposition that she had no recollection of Dr. Bowerman or of speaking with *any* anesthesiologist prior to the operation. Without any recollection of Dr. Bowerman, there is nothing to support plaintiff's claim that she harbored a reasonable belief that Dr. Bowerman was acting as a hospital employee. Even had plaintiff held such a belief, it would not have been reasonable because she signed a consent form that placed her on notice that some of the physicians in the medical center were independent contractors, and not MMCM's agents or employees. Furthermore, it was plaintiff's surgeon who advised plaintiff to obtain the TKA, and there is no indication from the record that the surgeon was an MMCM employee or agent. Finally, plaintiff presented no evidence demonstrating that MMCM had taken some action, or had neglected to act, in such a fashion as to encourage a belief that Dr. Bowerman was its employee or agent. In fact, the consent form *explicitly disavowed* that all physicians were its employees. Although it is likely that plaintiff was treated by actual employees of the hospital, brief treatment by actual agents of a hospital will not permit the hospital to be held vicariously liable. See *VanStelle*, 255 Mich App at 10. Similarly, the fact that plaintiff had the TKA performed at the hospital was also immaterial. See *id*. at 11. There must have been something affirmatively done, or negligently not done, by MMCM to "create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *Id*. at 10. Therefore, plaintiff failed to establish the elements of ostensible agency.

## D. SUMMARY DISPOSITION

After the exclusion of Dr. Rein's opinion testimony under MRE 702, plaintiff was unable to prove her medical malpractice claim. Without her proposed expert's opinions, she could not establish the standard of care or prove that Dr. Bowerman had breached that standard, and Dr. Bowerman was entitled to judgment as a matter of law. See *Dextrom*, 287 Mich App at 415. Furthermore, having conceded that Dr. Bowerman was not an actual agent of MMCM, MMCM could not be held vicariously liable for Bowerman's allegedly negligent actions, and MMCM was entitled to judgment as a matter of law. See *id*. Therefore, the trial court properly granted summary disposition to Dr. Bowerman and MMCM pursuant to MCR 2.116(C)(10).

Affirmed.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly